### COMMONWEALTH OF PENNSYLVANIA, Appellee,

### v.

### Charles MACK, Appellant.

Superior Court of Pennsylvania.

Submitted March 15, 2004.
Filed May 11, 2004.

Charles A. Klein, Philadelphia, for appellant.

Hugh J. Burns, Assistant District Attorney, for Commonwealth, appellee.

Before: STEVENS, TAMILIA, and JOHNSON, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County on November 4, 2002, following Appellant's conviction by the court of theft,[1] simple assault,[2] recklessly endangering another person,[3] receiving stolen property,[4] and possessing an instrument of crime.[5] Herein, Appellant contends that there was insufficient evidence to support his conviction, the verdict was against the weight of the evidence, and the court abused its discretion in denying the Commonwealth's motion to disqualify his trial counsel. We affirm the judgment of sentence.

¶ 2 The trial court aptly summarized the testimony adduced at trial as follows:

1. 18 Pa.C.S.A. § 3921(a).

2. 18 Pa.C.S.A. § 2701(a)(1), (2).

3. 18 Pa.C.S.A. § 2705.

4. 18 Pa.C.S.A. § 3925(a).

5. 18 Pa.C.S.A. § 907(b).

On September 6, 1998, at approximately noon, [Simon Coates ("Victim")] arrived at his girlfriend's apartment, who was not home at the time, after an attempt to purchase a car had fallen through. He was carrying $3,800 in cash to pay for the car and a firearm which he was licensed to carry. [Victim] had appraised [sic] his girlfriend, Lakiesha Scott, of his plan to purchase the used car and that he would be paying for the car in cash. When the deal fell through [Victim] contacted Ms. Scott to inform her that he did not purchase the car and then proceeded to her apartment on the 4600 block of Chester Avenue, where he waited between forty-five minutes and two hours for her to return.

Around 2:00 P.M. Ms. Scott arrived at her apartment complex with [Appellant], also her boyfriend, and the Co–Defendant Ronald Horn, [Appellant's] cousin. Mr. Horn and [Appellant] waited in the car while Ms. Scott ran upstairs. When Ms. Scott arrived upstairs she asked [Victim] to go down and pay the 'hack' ten dollars. [Victim] took thirty dollars from his large stash of cash, leaving the remaining behind, and proceeded downstairs by himself to pay the 'hack.' When [Victim] reached the vestibule area he was confronted by [Appellant], whom [Victim] assumed was the 'hack.'

[Appellant] snatched the ten dollars from [Victim] and began to curse. Within seconds, Mr. Horn walked into the vestibule area. [Victim] moved from the vestibule to the outside of the apartment where he was immediately hit by Mr. Horn and then by [Appellant]. [Victim] observed the butt of a handgun in [Appellant's] pocket. Mr. Horn and [Victim] fell to the ground as [Victim] was trying to hold Mr. Horn's hands, in an effort to both stop Mr. Horn from punching him and from producing whatever he was reaching for in his pocket. While [Victim] was on the ground tussling with Mr. Horn, [Appellant] removed [Victim's] gun from [Appellant's] holster around his waist. [Appellant] proceeded to hit [Victim] on the back of the head with the gun, to point the gun at [Victim], and to pull the trigger. Luckily for [Victim], the first round was not chambered. The incident continued with Mr. Horn and [Victim] on the ground fighting while [Appellant] continued to kick [Victim], to hit [Victim] with the gun, and to point and fire the gun unsuccessfully two more times. Also, while [Victim] was on the ground, the remaining twenty dollars fell out of his shirt pocket and [Appellant] picked up and took the money.

When the police arrived on the seen [sic], they were informed that [Appellant] and Mr. Horn had left the area and they observed that [Victim] was injured.

Trial Court Opinion filed 8/5/03 at 3–5 (citations to trial transcript omitted).

¶ 3 Although a warrant was issued for the arrest of Appellant on September 12, 1998, he remained a fugitive until January 2, 2001, when he was located by the police and arrested. He was charged with numerous offenses in connection with the September 6, 1998 incident. Appellant waived his right to a jury trial and, following a trial before the court, he was found guilty of theft, simple assault, recklessly endangering another person, receiving stolen property, and possessing an instrument of crime. On November 4, 2002, he was sentenced, *inter alia*, to concurrent nine (9) to twenty-three (23) month terms of imprisonment for the charges of theft and recklessly endangering another person, and a five (5) year term of probation

for the charge of possessing an instrument of crime.[6] The present appeal followed.[7]

■ ¶ 4 Appellant's first claim is that the evidence adduced at trial was insufficient to support his convictions. Specifically, he contends that the Commonwealth's case relied upon the testimony of Victim, which allegedly was "incredible and unreliable." Brief of Appellant at 8.

¶ 5 This Court has stated that:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001) (internal citations and quotation marks omitted).

¶ 6 In the case *sub judice,* Appellant acknowledges that "a review of the notes of testimony of the trial evidence presented by the prosecution 'appears' to establish the elements of the crimes and the identity of the appellant as a perpetrator...." Brief of Appellant at 9. He argues, however, that the prosecution's sole evidence of guilt was from Victim, who was unreliable and incredible. *Id.*

■ ¶ 7 As noted above, it is for the fact finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony. *Commonwealth v. Burns,* 765 A.2d 1144 (Pa.Super.2000). In this case, the court was free to accept the Commonwealth's version of the events as testified to by Victim. This Court has held that the uncorroborated testimony of a victim, if believed by the trier of fact, is sufficient to convict a defendant. *Commonwealth v. Davis,* 437 Pa.Super. 471, 650 A.2d 452, 455 (1994). Based on the record before us, particularly the testimony of Victim, we find that the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Appellant's conviction.

■ ¶ 8 Appellant further contends that the verdict rendered by the court was against the weight of the evidence. Pennsylvania Rule of Criminal Procedure 607 provides, in pertinent part, that:

(A) A claim that the verdict was against the weight of the evidence shall

---

6. For purposes of sentencing, the simple assault and receiving stolen property convictions merged with other offenses.

7. Pursuant to the trial court's order to do so, Appellant filed a statement of matters complained of on appeal, to which the court issued an Opinion in accordance with Pa.R.A.P. 1925(a).

be raised with the trial judge in a motion for a new trial:

> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A).

¶ 9. Herein, Appellant concedes that his weight of the evidence claim was not presented to the trial court in either an oral or written motion, *See* Brief of Appellant at 10. Appellant argues, however, that the claim was not waived since it was raised by him in this Court's docketing statement and his 1925(b) statement of matters complained of on appeal and addressed by the trial court in its 1925(a) opinion. We disagree with Appellant's contention.

¶ 10 In *Commonwealth v. Washington*, 825 A.2d 1264, 1266 (Pa.Super.2003), a case analogous to the one before us, a panel of this Court stated as follows:

> We recognize that the trial court addressed [a weight of the evidence] issue in its opinion filed pursuant to Pa.R.A.P. 1925(a) despite the absence of a post-trial motion. We also note that this Court has previously proceeded to review such a claim where the trial court did so in the first instance in *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997)(explaining that 'it is clear that this Court may review a weight of the evidence claim, even if the claim has not been preserved through post-sentence motions, as long as the trial court has addressed the claim in its Rule 1925 opinion,' regardless of whether the trial court resolved the issue in favor of the appellant.). However, we also note that *Goodwine* was decided prior to the most recent amendments to the Rules of Criminal Procedure. The present rule clearly requires that such a claim be raised initially by a motion to

the trial court, and Appellant's failure to do so compels us to find the issued waived.

*Id.* (footnote omitted).

¶ 11 Thus, in the present case, although the trial court addressed Appellant's weight of the evidence claim, in accordance with *Washington*, we find this claim waived. *See Commonwealth v. Causey*, 833 A.2d 165, 173 (Pa.Super.2003) (stating that, "The fact that appellant raised the issue in a statement of matters complained of on appeal and that the court then filed an opinion pursuant to Rule 1925(a) does not render the claim reviewable.").

■ ¶ 12 Finally, Appellant claims that the trial court abused its discretion when it denied the Commonwealth's pre-trial motion to disqualify Appellant's trial counsel, Lee Mandell, Esquire, who was retained rather than court-appointed. At that time, the Commonwealth contended a conflict of interest resulted from the relationship between Attorney Mandell and Mr. Horn, a defense witness in Appellant's case, in that Attorney Mandell represented Mr. Horn at his earlier trial in connection with the September 6, 1998 incident, at which he was acquitted, and in a separate trial, at which he was found guilty and was then serving a sentence as a result thereof. Following the Commonwealth's presentation of its position and the court's questioning of Attorney Mandell and Commonwealth Counsel Joseph Sauder, the following relevant exchange transpired:

> **THE COURT:** [Appellant], do you understand everything that's been said so far?
>
> **[APPELLANT]:** Yes.
>
> **THE COURT:**
>
> . . . .
>
> [Appellant], you have to realize that Mr. Mandell may have learned certain

information from Mr. Horn through his service as Mr. Horn's attorney. I don't mean what Mr. Horn said in open court because anyone sitting here would have heard that and would have gotten that type of information. The problem is what if Mr. Horn says something on the stand that might be different from what he had privately told Mr. Mandell, then Mr. Mandell is not going to be able to use any information that he obtained from Mr. Horn privately to cross examine him and if you had a different attorney maybe the attorney would either be intelligent enough or get lucky or whatever, would be able to do a very aggressive cross examination. I shouldn't say cross examination, but examination of the witness that would be favorable to you. You would get a good result on it. But Mr. Mandell is going to be prohibited from delving into or trying to bring out anything that he might have privately learned from Mr. Horn and that might adversely affect the best representation for you.

Now, I know what I've been saying is kind of difficult and I think I understand it, but do you think you understand it?

[APPELLANT]: Yes.

THE COURT: Mr. Souder [sic], do you have any questions for [Appellant]?

MR. SAUDER: Sir, you are aware that Mr. Mandell your attorney represented Ronald Horn in this case when it was tried separately. You are aware of that?

[APPELLANT]: Yes.

MR. SAUDER: And you are aware that Mr. Mandell also represented Mr. Horn in Mr. Horn's other cases?

[APPELLANT]: Yes.

MR. SAUDER: Are you related to Mr. Horn?

[APPELLANT]: Yes.

MR. SAUDER: How are you related to him?

[APPELLANT]: That's my cousin.

MR. SAUDER: And are you aware that Mr. Horn was convicted on another case that Mr. Mandell represented him on?

[APPELLANT]: Yes.

MR. SAUDER: Are you aware that Mr. Horn is appealing that case based on one of the issues being that Mr. Mandell didn't represent him properly?

[APPELLANT]: Yes.

. . . .

THE COURT: [Appellant], what I want to make very clear to you is that Mr. Mandell having previously represented Mr. Horn in this matter may not be able, it is possible that he might not be able to do some things or use certain knowledge to your best result because of that, and you have to be willing to understand that at some future date you cannot say it was really wrong for Mr. Mandell to represent me because he had already represented Mr. Horn for whatever reason that I can't even think of at this point, but I have been trying to give you the major reason or reasons how something might go bad. . . .

Do you understand that?

[APPELLANT]: Yes.

. . . .

THE COURT: . . . [D]o you want to consult with another attorney, and if you can't afford another attorney I would have the public defender talk to you privately as an attorney/client relationship about the precise situation you are in right now about whether you continue on with Mr. Mandell or not.

[APPELLANT]: I'm comfortable with him.

N.T. 9/3/03 at 8–14.

¶ 13 After Appellant was afforded the opportunity to speak with his parents and Attorney Mandell, the following question was asked of Appellant:

THE COURT: What are your wishes?

[APPELLANT]: I'm going to trial and let Lee [Mandell] represent me.

*Id.* at 17. Appellant was also given the opportunity to speak with Mr. Horn, who was present in the courtroom, concerning the situation with Attorney Mandell. After concluding their discussion, the court questioned Appellant as follows:

THE COURT: ... [Appellant], you have had a chance to speak with Mr. Horn.

[APPELLANT]: Yes.

THE COURT: I guess I should ask you one more time, understanding everything that you now understand, are you willing to have Mr. Mandell be your attorney of choice?

[APPELLANT]: Yes, Your Honor.

*Id.* at 21.

¶ 14 As evidenced by the foregoing, Appellant was thoroughly apprised of the situation that confronted him, was informed of the problems that might result if Mr. Mandell continued to serve as his attorney, and was painstakingly questioned at to his understanding of these matters. In addition, he was afforded the opportunity to discuss the matter with another attorney and was informed that the court would make a public defender available to him; however, Appellant declined the offers and

chose to proceed to trial with Attorney Mandell representing him. Thus, Appellant's claim that the court abused its discretion in failing to disqualify Attorney Mandell is without merit in that Appellant affirmatively waived his right to be represented by another attorney.[8]

¶ 15 Based on the foregoing, we affirm the judgment of sentence.

¶ 16 Affirmed.

---

8. To the extent Appellant claims that he had a constitutional right to effective assistance of counsel, and, thus, the court should have forced him to dismiss Attorney Mandell despite his responses to the questions asked of him, this Court has held that "[a]n individual may knowingly and intelligently waive a constitutional right." *Commonwealth v. Szekeresh,* 357 Pa.Super. 149, 515 A.2d 605, 607 (1986).