J-S37044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DONELL WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 1999 MDA 2016 |

Appeal from the Judgment of Sentence November 9, 2016
in the Court of Common Pleas of Franklin County,
Criminal Division, No(s): CP-28-CR-0000658-2016

BEFORE:  STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 29, 2017**

Donell Williams ("Williams") appeals from the judgment of sentence imposed following his conviction of one count each of conspiracy to deliver a controlled substance and criminal use of a communication facility.[1]   We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  **See** Trial Court Opinion, 2/6/17, at 2-8.

On appeal, Williams raises the following issue for our review:  "Should Williams'[s] conviction be overturned based on the fact that no reasonable jury could have found him guilty based on the evidence presented at trial?" Brief for Appellant at 5.

---

[1] **See** 18 Pa.C.S.A. §§ 903, 7512(a).

Although Williams's issue on appeal is worded somewhat vaguely, his argument challenges both the sufficiency and weight of the evidence.[2] With regard to the sufficiency of the evidence, Williams contends that the evidence presented at trial did not provide a reasonable basis for the jury to find him guilty of the above-mentioned crimes. *Id*. at 10. Williams asserts that the only evidence presented on the conspiracy charge was that Williams "was present at his home on the date in question except for a moment when he walked outside with his girlfriend and dog." *Id*. Williams claims that the only evidence presented on the criminal use of a communications facility charge was the testimony provided by a confidential informant, who claimed that he had spoken to Williams. *Id*.

In its Opinion, the trial court addressed Williams's challenge to the sufficiency of the evidence, set forth the relevant law, and determined that the evidence presented by the Commonwealth was sufficient to support each of Williams's convictions. *See* Trial Court Opinion, 2/6/17, at 9-15. We agree with the reasoning of the trial court, and affirm on the basis of its Opinion. *See id*.

With regard to the weight of the evidence, Williams argues that "[i]t was a gross oversight for the jury to have overlooked the fact that the

---

[2] In his court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal, Williams framed his issue as a challenge to the weight of the evidence, but his argument therein also raised a challenge to the sufficiency of the evidence. For this reason, the trial court addressed both Williams's sufficiency and weight claims in its Pa.R.A.P. 1925(a) Opinion.

- 2 -

informant, who was seeking to better his cause, had misidentified to the drug task force the actual person who made a hand[-]to[-]hand delivery to him." Brief for Appellant at 10. Williams further argues that "[f]or the jury to believe that an informant who could not even properly identify a person who [*sic*] he looked at in the eye during a direct hand[-]to[-]hand deal, could properly identify Williams based on a phone call, when the informant admitted that he had never spoken to the other Williams brothers, is incredulous." *Id*. at 10-11.

Pursuant to Pa.R.Crim.P. 607, a claim that the verdict was against the weight of the evidence must be raised with the trial judge in a motion for a new trial before sentencing or in a post-sentence motion. Here, Williams did not raise his weight of the evidence claim at any time before sentencing or in his post-sentence Motion. Accordingly, this issue has been waived. *See Commonwealth v. Filer*, 846 A.2d 139, 142 (Pa. Super. 2004).[3]

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2017

_____

[3] Even if Williams had preserved this issue for our review, we would have concluded that the issue lacks merit for the reasons expressed by the trial court in its Opinion. *See* Trial Court Opinion, 2/6/17, at 15-17.

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | Criminal Action |
| | : | |
| vs. | : | No. 658-2016 |
| | : | |
| Donell Williams, | : | |
| Defendant | : | Honorable Carol L. Van Horn |

## OPINION *sur* PA. R.A.P. 1925(a) AND ORDER OF COURT

Filed **FEB 06 2017**

Dep Clerk

Before Van Horn, P.J.

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | Criminal Action |
| | : | |
| vs. | : | No. 658-2016 |
| | : | |
| Donell Williams, | : | |
| Defendant | : | Honorable Carol L. Van Horn |

## STATEMENT OF THE CASE

On April 26, 2016, the above-captioned Defendant, Donell Williams, was charged with one count of Conspiracy to Deliver a Controlled Substance, 18 P.S. § 903, and one count of Criminal Use of a Communication Facility for "us[ing] a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under . . . The Controlled Substance, Drug, Device and Cosmetic Act" where a telephone constitutes a "communication facility", 18 P.S. § 7512(a). On September 19, 2016, a jury found Defendant guilty on both counts. On November 9, 2016, this Court sentenced Defendant to 27 to 60 months in a State Correctional Institution ("SCI") on the count of Conspiracy, and 18 to 60 months in a SCI on the count of Criminal Use of a Communication Facility to run at the expiration of the Conspiracy count.

Defendant filed a Notice of Appeal on December 8, 2016. On December 8, 2016, this Court directed Defendant to file a Concise Statement of the Matters Complained on Appeal ("Concise Statement") pursuant to Pa.R.A.P. 1925(b)(1).

2

Defendant filed a Concise Statement on December 29, 2016. The Court will now respond to Defendant's claims of error in this Opinion and Order of Court pursuant to Pa.R.A.P. 1925(a).

## BACKGROUND

At trial, the Commonwealth provided the Court with evidence pertaining to the incident giving rise to the instant charges. The Commonwealth called Detective Jason Taylor, an investigator with the Franklin County Drug Task Force, as its first witness.

Detective Taylor testified that he participated in an investigation with regard to Defendant and Defendant's two brothers in the delivery of heroin in November of 2015. (T.P. Trial, September 19, 2016, at 6). Detective Taylor explained that he was part of the surveillance team on November 24, 2015, and that on that day he was able to identify Defendant going in and out of the house believed to be Defendant's residence. (*Id.*, at 6-8). Detective Taylor testified that the goal of that particular day's investigation was to purchase heroin from Defendant and his brothers. (*Id.* at 7). Detective Taylor noted that Defendant also went by the nicknames "Muscles" or "Mus". (*Id.* at 17). Surveillance videos from November 24, 2015 were played at trial, during which Detective Taylor identified

3

Defendant's brother Lamont Williams[1] as being "out scouting the neighborhood". (*Id.* at 25).

Next, the Commonwealth called Detective Scott Wolfe, of the Shippensburg Police Department, as a witness. Like Detective Taylor, Detective Wolfe participated in the November 24, 2015 investigation into heroin being sold out of Defendant's residence. (*Id.* at 31). Detective Wolfe testified that his role in the investigation was to place a phone call to a confidential informant ("CI"), and to drive the CI to a location from which he would obtain heroin. (*Id.* at 32). Prior to the controlled purchase, Detective Wolfe testified that he searched the CI for controlled substances and determined that he had none on his person. (*Id.*). Detective Wolfe testified that he watched the CI approach the set location, and that just prior to losing sight of the CI, heard someone on the radio state the CI was now in their line of vision. (*Id.* at 33). Detective Wolfe testified that he lost sight of the CI for about three to four minutes. (*Id.*). Upon return, the CI got into Detective Wolfe's vehicle and gave Detective Wolfe three bags containing suspected heroin. (*Id.* at 34). Detective Wolfe testified that the three bags were

---

[1] Defendant's brother Lamont Williams was not a co-defendant in the instant trial. However, the Franklin County District Attorney's Office has charged Lamont Williams for similar crimes. Co-defendant in the instant case is Defendant's other brother, Booker Williams. (*See* T.P. Trial, at 77, 113).

4

actually corners of plastic bags, which indicated to him the heroin originated from Baltimore.[2] (*Id.* at 36).

The Commonwealth next called the CI, Matthew Sheffler, as a witness. (*Id.* at 48). Mr. Sheffler testified that after being incarcerated, he requested an interview with a drug task force investigator to identify individuals who sold heroin. (*Id.* at 52). Mr. Sheffler testified that on November 24, 2015, he met with Detective King, and that he contacted Mus—whom he also identified as Donnell Williams—to set up the purchase of heroin. (*Id.* at 53, 54). Mr. Sheffler indicated to the Court that prior to the controlled purchase, he had met with both Defendant and his brothers. (*Id.* at 55). Mr. Sheffler testified that when speaking with Defendant, he explained he was looking to purchase three bags of heroin for one hundred dollars. (*Id.* at 55). Mr. Sheffler further noted that Defendant responded by requesting they meet in Waynesboro, near the Turkey Hill. (*Id.*). Mr. Sheffler noted that following a search of his person performed by the drug task force, he was driven to the set location and given money to purchase the drugs. (*Id.*). Mr. Sheffler stated that it was one of Defendant's brothers, and not Defendant, who met and sold him the drugs. (*Id.*). A video recording, which Mr. Sheffler identified as his own recording of the transaction, was played at trial. (*Id.* at 56-

---

[2] Detective Wolfe testified that purchases of Baltimore heroin are generally bundled in four grams of rolled heroin, which individual dealers divide into dosage units, typically placed in the corner of a plastic bag which they tie a knot in and rip off from the rest of the bag. (T.P. Trial, at 36).

57). Mr. Sheffler indicated that Defendant called him on the phone near the end of the recording, and that he knew it was Defendant. (*Id.* at 58, 67).

The Commonwealth called Detective Brad Kyner of the Franklin County Drug Task Force as the next witness. Detective Kyner testified that on November 24, 2015, he assisted in an investigation in his capacity as a surveillance/identification officer. (*Id.* at 71). Detective Kyner testified that while on surveillance, he "observed a black male who was identified as Booker Williams walking west on main across Fairview, and then walk south past my location." (*Id.* at 74). He testified that due to safety and integrity concerns, he moved his vehicle to avoid identification by Defendant's brother. (*Id.* at 75). Detective Kyner testified next that he heard on the radio that the CI was walking west on Main Street, and that as he "pulled up, waiting at the stop sign, the informant and Mr. Booker Williams met at that location. They physically met." (*Id.*). Detective Kyner also indicated that he participated in the execution of a search warrant of Defendant's residence. (*Id.* at 76). He testified that at the time of the search, Defendant was at the residence. (*Id.*).

The Commonwealth next called Detective Mark King, from the Franklin County Drug Task Force, as a witness. Detective King testified that he was the lead officer of the investigation into the Williams brothers, Donnell, Booker, and Lamont, which began around the end of October/early November of 2015. (*Id.* at

87). Detective King testified that he was the one to interview the CI when he approached the drug task force, that the CI disclosed he could purchase heroin from Defendant—known to him as Mus—and that the CI provided him with the phone number 240-329-7001. (*Id.* at 90). Detective King testified that the phone number 240-329-7001 later came up in the subsequent arrest of Defendant's brother Lamont Williams, as it was a number in Lamont William's phone under the contact name Mus. (*Id.* at 91-92). Detective King also testified that the phone number 240-329-7001 was under the name "Mus" or "Musc" on two other phones confiscated during the execution of a search warrant in another drug-related case. (*Id.* at 92). Detective King testified that the phone call made by the CI on November 24, 2015, for the purpose of setting up a purchase of heroin, was made to the same phone number, 240-329-7001. (*Id.* at 93). Detective King also testified as to the three bags of heroin obtained by the CI, that he felt it was significant that the heroin was in "plastic bags that you commonly use to make sandwiches." (*Id.* at 99).

Next, Detective King that he conducted a trash pull of Defendant's residence on January 20, 2016. (*Id.* at 100-01). Detective King noted that the trash pull revealed a number of bags with their corners missing. (*Id.* at 101). Detective King testified that another trash pull was conducted on March 16, 2016, during which more plastic bags with their corners missing were found. (*Id.* at 104).

7

Following this subsequent search, a search warrant was applied for and executed on Defendant's residence. (*Id.* at 105-06). Detective King testified to the authenticity of photographs admitted at trial, which he explained were taken during the execution of the search warrant, and which depicted the master bedroom of Defendant and his girlfriend. (*Id.* at 107). Detective King described the photographs as depicting: a "little bit of marijuana that's wrapped up in a plastic sandwich bag and cash"; "money in a drawer"; "a Century Link account summary [with] the name, Donnell Williams"; "a letter, it looks like it may have come from a prison to [Defendant's girlfriend] and Donnell Williams"; "a letter addressed to Donnell Williams"; a "pill bottle, and to the left is a digital scale with what appears to be heroin residue"; "Donnell Williams' Pennsylvania identification card"; and "Donnell Williams' social security card". (*Id.* at 108-10).

## ISSUES RAISED

Defendant raises the following issues in his Concise Statement:[3]

1. The verdict of the Jury was against the weight of the evidence.

2. Despite Defendant having never requested same, his attorney should have filed a motion to sever his case from that of his co-defendant, in that the jury was more likely to have found him guilty than not, based on the actions of his co-defendant.

---

[3] Concise Statement of Matters Complained of on Appeal, December 29, 2016, at 3.

8

3. The sentence imposed upon Defendant by the Court was excessive, beyond that which was recommended by Franklin County Probation, and an abuse of the Court's discretion.

## DISCUSSION

Defendant raises the aforementioned 3 issues on appeal. This Court will consider each issue in turn.

### I.  Sufficiency and Weight of the Evidence

In the instant case, Defendant avers in issue 1 that the jury verdict was against the weight of evidence. However, in addition to this averment, Defendant also offers the following brief argument, which on its face raises the issue of sufficiency of the evidence: "a reasonable jury would not have found him guilty of either of the charges based on the evidence presented, none of which sufficiently placed Williams at the scene of a sale, showed that he conspired to cause the sale, or that he used a communication device." (Concise Statement). As there are separate legal standards for challenging the (A) sufficiency of the evidence and (B) the weight of the evidence, this Court will consider each issue in turn.

### A. Sufficiency of the Evidence

The standard for evaluating sufficiency of the evidence claims is well established:

> The standard we apply when reviewing the sufficiency of
> the evidence is whether viewing all the evidence

9

admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.

*Commonwealth v. McClendon*, 874 A.2d 1223, 1228 (Pa. Super. 2005) (citations omitted); *see also Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa. Super. 2011). When applying this standard, the court "may not weigh the evidence and substitute our judgment" for that of the jury. *Commonwealth v. Mack*, 850 A.2d 690, 693 (Pa. Super. 2004) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001)). Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Eckrote*, 12 A.3d 383, 386 (Pa. Super. 2010) (citing *DiStefano*, 782 A.2d at 582). Importantly, "facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Mack*, 850 A.2d at 693 (quoting *DiStefano*, 782 A.2d at 582). However, "guilt must be based on facts and conditions proved," and the evidence is insufficient if guilt is based on "suspicion or surmise." *Eckrote*, 12 A.3d at 386 (citing *Commonwealth v. Swerdlow*, 636 A.2d 1173 (Pa. Super. 1994)). A conviction may be based entirely on circumstantial evidence as long as the "evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Chmiel*, 639 A.2d 9, 11 (Pa. 1994). Finally, when deciding

10

whether the evidence is sufficient to sustain the verdict, "the entire record must be evaluated and all evidence actually received must be considered." *Mack*, 850 A.2d at 693 (quoting *DiStefano*, 782 A.2d at 582). Yet, "[t]he fact finder is free to believe all, part, or none of the evidence presented at trial." *Moreno*, 14 A.3d at 136.

In the instant case, Defendant challenges the sufficiency of the evidence to sustain his convictions for Conspiracy to Deliver a Controlled Substance, and Criminal Use of a Communication Facility. As explained by the Pennsylvania Supreme Court:

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in the furtherance of the agreed upon crime. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

*See Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004) (internal citations omitted); *see also* 18 Pa.C.S. § 903. As with accomplice liability, to establish a defendant's participation in a conspiratorial agreement to commit a crime, "[m]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime are insufficient". *See Murphy*, 844 A.2d at 1238 (quoting

11

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002)). Indeed, some additional evidence of defendant's intent to act with his co-conspirator to commit the crime is required. *See Murphy*, 844 A.2d at 1238 (citing *Lambert*, 795 A.2d at 1016; *Commonwealth v. Wayne*, 720 A.2d 456, 464 (Pa. 1998)). However, as direct evidence of the conspiratorial agreement is rarely available, circumstantial evidence is almost always employed to prove a defendant's criminal intent. *Murphy*, 844 A.2d at 1238 (citing *Commonwealth v. Spotz*, 716 A.2d 580, 592 (Pa. 1992)). "[T]he relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators" are examples of such circumstantial evidence. *Murphy*, 844 A.2d at 1238 (citing *Wayne*, 720 A.2d at 463-64). Upon a finding that an agreement existed which the defendant intentionally entered into, "that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Id.*

We find that the evidence in the instant case was sufficient for the jury to convict Defendant of Conspiracy. When viewing the evidence in the light most favorable to the verdict winner, the Commonwealth, this Court is persuaded that Defendant did not have a "[m]ere association with the perpetrators . . . or mere knowledge of the" delivery of heroin. *See Murphy*, 844 A.2d at 1238 (quoting *Lambert*, 795 A.2d at 1016). Rather, the Commonwealth presented evidence whereby the jury could have found Defendant acted with intent to facilitate the

12

delivery of heroin, namely through the phone call setting up a heroin purchase placed by the CI to a number identified by multiple sources as belonging to Mus. (*See* T.P. Trial, at 53-55, 90-93). Moreover, the Commonwealth presented photographic evidence at trial, depicting Defendant's master bedroom, including photos of mail identifying Defendant's name and the address of the residence searched, as well as various drug paraphernalia often used in the sale of heroin. (*Id.* at 108-10). Additionally, the evidence presented at trial supports a finding by the jury that Defendant and his brothers had an agreement to engage in the delivery of heroin. Specifically, the Commonwealth presented evidence from which the jury could draw the conclusion that Defendant set up a heroin purchase with the CI, and that Defendant's brother delivered heroin to the CI—namely testimony as to the purchase, as well as the CI's acquisition of three bags of heroin. (*Id.* at 55-57). Finally, the evidence presented at trial supports a finding that the overt act requirement was satisfied. Here, as noted above, the Commonwealth presented evidence from which the jury could draw the conclusions that the Defendant set up a heroin purchase with the CI, and that Defendant's brother delivered heroin to the CI. Both of these plausible conclusions represent overt acts in the furtherance of delivering heroin.

Viewing the above noted evidence in the light most favorable to the Commonwealth, there was sufficient evidence to enable the jury to find that

13

Defendant engaged in Conspiracy to deliver heroin. Accordingly, Defendant's claim as to the sufficiency of evidence regarding his Conspiracy conviction is meritless.

Next, we must consider whether the evidence was sufficient for the jury to convict Defendant of Criminal Use of a Communication Facility. To convict a defendant of Criminal Use of a Communication Facility, the trier of fact must find that the defendant "use[d] a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under . . . The Controlled Substance, Drug, Device and Cosmetic Act." 18 Pa.C.S. § 7512(a). Under Pennsylvania law, a telephone constitutes a communication facility. 18 Pa.C.S. § 7512(c). Pursuant to Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance" is prohibited. 35 P.S § 780-113(a)(30).

We find that the evidence in the instant case was sufficient for the jury to convict Defendant of Criminal Use of a Communication Facility. Based on the evidence presented at trial, the jury could have found that Defendant used a telephone to "commit, cause or facilitate the commission . . . of any crime which

14

constitutes a felony under . . . The Controlled Substance, Drug, Device and Cosmetic Act." 18 Pa.C.S. § 7512(a). In the instant case, the Commonwealth presented evidence at trial supporting a conclusion by the jury that Defendant set up a heroin purchase with the CI over the telephone. (*See* T.P. Trial, at 53-57). Specifically, the Commonwealth provided testimony regarding the phone number 240-329-7001, evidence supporting the inference that the phone number belonged to Defendant, and that this phone number was used by the CI to reach Defendant. (*Id.* at 53-55, 90-93). Finally, the delivery of heroin falls within the purview of Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act. Accordingly, when viewing the evidence in the light most favorable to the Commonwealth, this Court is persuaded that evidence was sufficient for a jury finding that Defendant used a telephone at the number 240-329-7001 to facilitate a delivery of heroin

It is clear from the face of the record that the Commonwealth presented evidence for all elements of Criminal Use of a Communication Facility. Defendant's claim as to the sufficiency of evidence regarding his Criminal Use of a Communication Facility conviction is therefore meritless.

## B. Weight of the Evidence

A verdict is against the weight of the evidence where it is "so contrary to the evidence as to shock one's sense of justice and make the award of a new trial

imperative." *Commonwealth v. Hudson*, 955 A.2d 1031, 1035 (Pa. Super. 2008) (quoting Commonwealth v. Rossetti, 863 A.2d 1185, 1191 (Pa. Super. 2004)). The jury is entitled "to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder." *See Commonwealth v. Flor*, 998 A.2d 606, 626 (Pa. 2010) (citing *Commonwealth v. Treiber*, 874 A.2d 26, 30 (Pa. 2005)). Furthermore, the jury does not have to believe any testimony and "the weight to be ascribed to any testimony is a determination that rests exclusively with the finder-of-fact." *See Flor*, 998 A.2d at 626. "A new trial should not be granted [based upon] a mere conflict in the testimony" and must have a stronger foundation than a "reassess[ment of] the credibility of witnesses". *Bruce*, 916 A.2d at 665 (quoting *Widmer*, 744 A.2d at 751-52). The court must not act as a thirteenth juror. *See id.* Rather, the Court must determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* (quoting *Widmer*, 744 A.2d at 751-52).

Here, Defendant alleges that the jury verdict was against the weight of the evidence. (Concise Statement). Defendant argues that "a reasonable jury would not have found him guilty of either of the charges based on the evidence presented, none of which sufficiently placed Williams at the scene of a sale, showed that he conspired to cause the sale, or that he used a communication device." (*Id.*).

16

Defendant does not offer further argument to support this averment. However, it is not this Court's job to determine the credibility of witnesses, their testimony, or to act as a decider of fact. *See Commonwealth v. Bruce*, 916 A.2d 657, 665 (Pa. Super. 2007) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000)). To do so would be to usurp the role of the jury. *Id.*

Therefore, Defendant's weight claim fails. The jury is free to believe all, part, or none of the evidence, and to make credibility determinations. Upon careful consideration of the record, the Court does not find any of the evidence presented by the Defendant in support of his weight claim so clearly of greater weight than the evidence presented supporting his convictions that failure to give it credence amounts to a denial of justice. The verdicts are not so contrary to the evidence as to shock one's sense of justice.

## II.   Ineffective Assistance of Counsel Claim

In issue 2, Defendant avers that his attorney should have filed a motion to sever his case from that of his co-defendant, in that the jury was more likely to have found him guilty than not, based on the actions of his co-defendant. (Concise Statement). Defendant argues that his attorney had no rational basis for failing to have filed such a motion, and that "it is likely that the jury simply found [Defendant] guilty of the charges against him, despite the paucity of evidence, solely due to the fact that they found his co-defendant guilty, to whom there was a

17

plethora of evidence suggesting the latter's guilt." (*Id.*). While this issue does not plainly raise an IAC claim, its grounding in Defendant's attorney's failure to file a motion to sever the case between co-defendants is in fact a claim for Ineffective Assistance of Counsel (IAC).

Prior to the Pennsylvania Supreme Court's 2002 decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), claims raising the issue of IAC were required to be brought "at the earliest opportunity, including on direct appellate review." *See* Commonwealth v. Barnett, 25 A.3d 371, 373 (Pa. 2011) (explaining the rule of *Commonwealth v. Hubbard*, 372 A.2d 687 (1977), which was abrogated by *Grant*). The *Grant* Court reversed this doctrine, explaining that such claims "require further fact-finding, extra-record investigation and where necessary, an evidentiary hearing." *Grant*, 813 A.2d at 736. Accordingly, the *Grant* Court "held that claims of ineffective assistance of counsel should ordinarily be reserved for collateral review." See *Barnett*, 25 A.3d at 373; *see also Grant*, 813 A.2d at 737.

In 2011, the Pennsylvania Supreme Court once again considered the appropriate procedure for raising IAC claims. *See generally Barnett*, 25 A.3d 371. In *Commonwealth v. Barnett*, the Court went a step further than *Grant*, prohibiting the raising of IAC claims on appeal, "absent an 'express, knowing and voluntary waiver'" of his right to pursue a Post Conviction Relief Act ("PCRA") claim. *Id.* at

18

377 (quoting *Commonwealth v. Liston*, 977 A.2d 1089, 1096 (Pa. 2009) (Castille, C.J., concurring)).

Here, Defendant raises an IAC claim at the appeal level. Defendant has not, however, indicated he has waived his right to pursue a PCRA claim. As Defendant's IAC claim is procedurally inappropriate at this stage of his case, this Court dismisses the issue.

## III.   Abuse of Discretion in Sentencing

The trial court is afforded "great deference as it is the sentencing judge that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime." *Commonwealth v. Allen*, 24 A.3d 1058, 1065 (Pa. Super. 2011). A sentencing court:

> [M]ust follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

*Commonwealth v. Mouzon*, 812 A.2d 617, 620 (Pa. 2002) (quoting 42 Pa.C.S.A. § 9721(b)). "The sentencing court, however, must also consider the sentencing guidelines." *Commonwealth v. Hardy*, 939 A.2d 974, 980 (Pa. Super. 2007).

Depending on the offense gravity score, a court may impose an aggravated sentence that is a specified amount of time longer than the top of the standard

19

range sentence, upon a determination that aggravating circumstances are present.

204 Pa. Code § 303.13(a)(1)-(4). In *Commonwealth v. Mouzon*, the Supreme

Court explained:

> Essentially, the Guidelines set forth a recommended standard range ("standard range") in which any given defendant's sentence should fall, based on the gravity of the defendant's offense and the defendant's prior record. For each standard range that corresponds to a particular offense committed by a particular defendant, the Guidelines also sets forth an "aggravated range" and a "mitigated range" to guide the court should it believe that a sentence in the standard range would be inappropriate under the circumstances.

*Mouzon*, 812 A.2d at 620 n.3. "[A] trial court judge has wide discretion in

sentencing and can, on the appropriate record and for the appropriate reasons,

consider any legal factor in imposing a sentence in the aggravated range." *Hardy*,

939 A.2d at 980 (quoting *Commonwealth v. Stewart*, 867 A.2d 589, 593 (Pa.

Super. 2005)). "When the court imposes an aggravated or mitigated sentence, it

shall state the reasons on the record and on the Guideline Sentence Form". 204 Pa.

Code § 303.13(c).

In the instant case, Defendant avers that the sentence imposed by this Court

was excessive, beyond that which was recommended by Franklin County

Probation, and an abuse of the Court's discretion. (Concise Statement). Defendant

further argues that:

20

> [T]he Court sentenced [Defendant] to a sentence far above that recommended by the Franklin County Probation Office, and failed, with out [sic] reasonable basis, to make Williams eligible for a boot camp and/or State SIP sentence, both of which [Defendant] qualified for and to which a sentence to would have been in his and society's best interest.

(*Id.*). Defendant's claims challenge the discretionary aspects of his sentences.

The Conspiracy charge carries a maximum sentence of 15 years (180 months), with a standard range of 21 to 27 months. The Criminal Use of a Communication Facility charge carries a maximum sentence of 7 years (84 months), with a standard range of 12 to 18 months. This Court sentenced Defendant to 27 to 60 months in SCI on the Conspiracy charges, and 18 to 60 months in SCI on the charge for Criminal Use of a Communication Facility to run at the expiration of the sentence for Conspiracy.

The Court had the opportunity to diligently and properly review a pre-sentence report prior to each sentencing. This Court also listened to Defendant's apologetic and explanatory statements at the sentencing hearing. At the November 9, 2016 sentencing hearing, this Court stated:

> [Court]: Mr. Williams, you are here today to be sentenced on two charges for which you were convicted by a jury. Count 1 is possession with intent to deliver heroin. The gravity score is 6. Your prior record score is 5, making the standard range 21 to 27 months. Count 2 conviction, criminal use of a communication facility. Gravity score of 5. Prior record score of 5, making the standard range 12 to 18.

21

I have reviewed the presentence report prepared in this matter, the sentencing memorandum submitted by the Commonwealth, having heard what the attorneys have said, as well as yourself in determining what your sentence should be. Contained within the presentence report is your prior criminal record. You had a juvenile adjudication that is not factored into your score, but I know it was drug related. So, from the time you were a juvenile, you had drug issues.

Then, you had a receiving stolen property conviction in Montgomery County, Pennsylvania and received a sentence of probation, that was in 1998. The same year you had probation without verdict on a drug charge in Philadelphia. One year later, conviction in Philadelphia, felony possession with intent to deliver. You received a sentence of incarceration in their local jail.

2005, in Maryland a delivery charge. You received a sentence of incarceration at that time. And then 2009, another felony possession with intent to deliver in Maryland and received a sentence of incarceration as well. And, I will note that you were on supervision in Maryland at the time you committed this offense. As you previously stated . . . that you were out about three years before these charges were brought against you and you have stated both in the presentence report and here today. You admit you missed [sic] up, the person called you for drugs and you sent out your brother to deliver it.

[Defendant]: Yes.

[Court]: Have you ever held a job where you received a paycheck?

[Defendant]: Yes.

[Court]: What did you do in your life?

22

[Defendant]: I was at Goodwill in 2013, and then I went to blast stone at T.R. Wills in Chambersburg, and then I was at Hard Times Café in Hagerstown, and then I just was at Mattress Warehouse in Hagerstown.

[Court]: Do you understand there is another option to earning money than illegally selling drugs and profiting off the addictions of others?

[Defendant]: Yes.

[Court]: If you were before me with a first time offense, maybe even a second time offense, the pleas of your attorney would probably be accepted better by the Court.

[Defendant]: Yes.

[Court]: But, sir, your history shows that you have chosen to be a drug dealer your entire adult life.

[Defendant]: Yes.

[Court]: Therefore, your sentence will not afford you the opportunity for any kind of consideration for reduction in sentence to go into a boot-camp program. You will be RRRI eligible, because you do not have a sentence that would disqualify you within your criminal history. So, these are the sentences that I am going to impose.

(T.P. Sentencing, November 9, 2016, at 11-15).

It is evident that this Court reviewed the sentence summary sheet giving due consideration the facts and character of Defendant's crimes. Thus, the record necessarily rejects the Defendant's claim that the Court's sentence was imposed without a reasonable basis. The Court considered the pleas of Defendant, and Defendant's counsel. However, the Court fashioned a sentence it deemed fitting

23

given Defendant's criminal history, as well as relevant statutory authority. Review of the applicable record and statutory authority definitively shows that this Court properly applied the guidelines in question when arriving at the Defendant's sentence. For all of these reasons, Defendant's abuse of discretion claim is meritless.

## CONCLUSION

For the abovementioned reasons, the verdicts are supported by sufficient evidence, and they are not against the weight of the evidence. Furthermore, the Court did not abuse its discretion in the various sentences it imposed upon Defendant. This Court dismisses the IAC claims, as they are procedurally inappropriate at this stage in the case. Furthermore, the Court did not abuse its discretion in the various sentences it imposed upon Defendant. Accordingly, this Court respectfully requests the Superior Court affirm the various sentences imposed on Defendant as a result of his guilty pleas and the jury verdict which found him guilty of the remaining counts, and the underlying sentencing scheme fashioned after due consideration of all relevant factors, and dismiss the above captioned appeals.

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL

# DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | Criminal Action |
| | : | |
| vs. | : | No. 658-2016 |
| | : | |
| Donell Williams, | : | |
| Defendant | : | Honorable Carol L. Van Horn |

## ORDER OF COURT

**AND NOW THIS** _3rd_ **DAY OF February, 2017,** pursuant to Pa. R.A.P. 1931(c),

**IT IS HEREBY ORDERED THAT** the Clerk of Courts of Franklin County shall promptly transmit to the Prothonotary of the Supreme Court the record in this matter along with the attached Opinion *sur* Pa. R.A.P. 1925(a).

*Pursuant to Pa. R. Crim. P. 114, the Clerk of Courts shall immediately docket this Opinion and Order of Court and record in the docket the date it was made. The Clerk shall forthwith furnish a copy of the Opinion and Order of Court, by mail or personal delivery, to each party or attorney, and shall record in the docket the time and manner thereof.*

By the Court,

Carol L. Van Horn, J.

copies:
Franklin County District Attorney's Office
Kristopher G. Accardi, Esq., Counsel for Defendant
Stephen Kulla,

25