J-A23043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON ALEXANDER | : | |
| | : | |
| Appellant | : | No. 1189 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 3, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001279-2023

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: November 12, 2025**

Appellant, Aaron Alexander, appeals from the judgment of sentence of an aggregate term of 8 to 16 years' incarceration, imposed after he was convicted, following a non-jury trial, of aggravated assault (18 Pa.C.S. § 2702(a)(1)) and possession of a firearm by a person prohibited (18 Pa.C.S. § 6105(a)(1)). Herein, Appellant challenges the sufficiency of the evidence to sustain his convictions. After careful review, we affirm.

The trial court summarized the facts underlying Appellant's convictions, as follows:

> Jacob Spangler, a police officer with the City of Pittsburgh Police Department, was working in that capacity on September 12, 2022. On that date, Officer Spangler was called to 414 Cathedral Avenue for a call regarding a male who was shot. When he arrived at the scene, he observed [two] or [three] other officers on the porch of the residence with a male, later identified as Wayna Grimsley ("Grimsley") who was [lying] on the porch. Grimsley had his shirt off and had gunshot wounds to his chest. He was

"moving his arms a little bit and his head." He was conscious, but Officer Spangler was unable to determine if he was speaking. Officer Spangler left the scene and followed the ambulance to the hospital.

Paul Becker, a detective with the City of Pittsburgh Police Department, testified that on September 12, 2022, he responded to the residence located at 414 Cathedral Avenue. Detective Becker photographed the scene, which included the physical location, a shell casing, and several gravitational blood drops. Detective Becker testified that the blood drops were located in "the stairwell from the first floor to the second floor[,] and from the second floor to the attic."

Janine Triolo, a detective with the City of Pittsburgh Police Department, testified that she responded to the scene at 414 Cathedral Avenue on September 12, 2022. She assisted Detective Becker with processing the scene. In addition, Detective Triolo interviewed Grimsley on September 13, 2022. Detective Triolo testified that Grimsley stated that the person who shot him was "the boyfriend of Hilary Smith and that his name was Joe." He told Detective Triolo that his assailant was "his boarding house mate's boyfriend," and that there have been issues with them in the past. He then described the physical characteristics of the man he knows to be Joe.

After obtaining this information, Detective Triolo began to search for and identify Joe. Through online and various records searches, Detective Triolo was able to find a photograph of Hilary Smith's boyfriend. This photograph matched the description given to Detective Triolo by the victim. Ultimately, the person in the photograph was determined to be [Appellant]. Detective Triolo created a photo array…, [and] gave the photo array to other detectives to show the victim.

William Mudron, a detective with the City of Pittsburgh Police Department, testified that on September 18, 2022, he presented the photo array that was created by Detective Triolo to the victim. Photograph 7 was [Appellant]. On that date, Grimsley identified the individual in Photograph 7 as being "Joe," the individual who shot him. At that time, Grimsley wrote on the photo array, "This is the guy that shot me. He is my roommate on Cathedral Avenue. He shot me and ran."

Elvis Duratovic, a detective with the City of Pittsburgh Police Department, testified that he was working as part of the fugitive

- 2 -

task force on January 5, 2023. On that date, he located and apprehended [Appellant].

Grimsley testified that on September 12, 2022[,] he was living at 414 Cathedral Avenue. This residence was a boarding house[,] and he was renting one of the four rooms. His room [was] located on the third floor. Although he lived in the same residence with the other boarders, he was not "friends" with any of them, but would recognize them. On September 12, 2022, he was babysitting [a] child, who was then [three] years old. Grimsley testified that on that day, he heard arguing between Joe and his "girl." He then heard a knock on his door. Grimsley then testified as follows:

> So, he knocks on my door. He puts a gun to my face; he goes, are you talking to my girl, something like that. I'm like no, I did not. I have [a child] in [the] room. He's like— I'm like, all right, so you're going to shoot me in front of [this child]? So, he puts the gun down and [says] no, I'm not going to shoot you in front of [the child]. So, at that point he leaves.

Grimsley then testified that he went downstairs, as he thought [Appellant] was leaving. When Grimsley rounded the corner, [Appellant] was standing right outside of the door, and shot him in the chest. Grimsley identified [Appellant] as being the person known to him as "Joe" and who shot him in a courtroom identification and through [the] photo array.

Trial Court Opinion (TCO), 12/19/24, at 3-6 (citations to the record omitted).

Based on this evidence, the court convicted Appellant of the above-stated offenses. On June 3, 2024, he was sentenced to the aggregate term set forth *supra*. Appellant filed a timely post-sentence motion, challenging the weight and sufficiency of the evidence to sustain his convictions. On July 29, 2024, the court's order denying Appellant's post-sentence motion was filed. Appellant filed a timely notice of appeal on August 28, 2024. He and the court thereafter complied with Pa.R.A.P. 1925. Herein, Appellant states two issues for our review:

I.      Whether the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] committed [a]ggravated [a]ssault because the identity testimony presented by the Commonwealth was so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture?

II.     Whether the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] possessed a firearm in violation of 18 Pa.C.S.[] § 6105 because the identity testimony presented by the Commonwealth was so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture?

Appellant's Brief at 6.

Appellant's issues both challenge the sufficiency of the evidence to sustain his convictions. Thus, we begin by observing that,

> [w]hether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope of review is plenary. In conducting our inquiry, we examine[,]
>
> > whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Rojas-Rolon***, 256 A.3d 432, 436 (Pa. Super. 2021)

(cleaned up).

- 4 -

Although Appellant recognizes the "general rule" that "[t]he argument shall be divided into as many parts as there are questions to be argued[,]" he combines his two issues into one discussion in the Argument portion of his brief, as his "challenges … rely on the same theory of relief." Appellant's Brief at 14 n.2 (quoting Pa.R.A.P. 2119(a)). Specifically, for both Appellant's issues, he "challenges the fundamentally flawed identification given by the victim[,]" arguing that it was insufficient to sustain his two convictions. *Id.* at 14. Because Appellant's argument applies equally to both his issues, and his combining his two claims does not hinder our review, we will not consider his claims waived based on his failure to comply with Rule 2119(a).

However, Appellant's argument is waived on a different basis. Appellant contends that the evidence was insufficient to convict him in this case because the Commonwealth failed to prove that he was the person who shot Grimsley. Appellant argues that the only evidence identifying him as the shooter was Grimsley's "wholly different, conflicting[,] and inconsistent identifications." *Id.* at 18. He avers that, first, Grimsley "did not give any description of who shot him," then said the shooter "was a black male wearing all black[,]" and later "insisted that his roommate had knocked on his door, shot him and fled." *Id.* "Finally, [Grimsley] asserted that someone called 'Joe' shot him." *Id.* Appellant contends that Grimsley's inconsistent statements regarding the shooter's identity cast doubt on the credibility of his identification, as did his varying statements on whether he knew Appellant prior to the shooting, and how long he had spent in the hospital. *See id.* at 18-19. Appellant insists

that the inconsistencies and contradictions in Grimsley's statements and testimony made his identification of Appellant as the shooter so unreliable that any verdict premised on it "would be pure conjecture." *Id.* at 18.

Clearly, Appellant is attacking the trial court's determination that Grimsley's identification of Appellant was credible. It is well-settled that attacks on credibility determinations are challenges to the weight, not sufficiency, of the evidence. *See Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997). We will not review a sufficiency claim where the argument in support thereof goes to the weight, not the sufficiency of the evidence. *See Commonwealth v. Sherwood*, 982 A.2d 483, 492 (Pa. 2009) (citing *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (stating that an appellate court will not review sufficiency claim where argument in support of claim goes to weight, not sufficiency, of the evidence); *Commonwealth v. Mack*, 850 A.2d. 690, 693 (Pa. Super. 2004) (providing no relief where the appellant alleged sufficiency but argued a weight claim; the weight issue was reserved for the fact-finder below)).

Nevertheless, even if we accepted Appellant's insistence that "both of his identity challenges focus[] on the sufficiency of the evidence" because he is "assert[ing] that the Commonwealth's evidence identifying [him] as the shooter in the instant case is inherently unreliable[, such] that a verdict based upon it could amount to no more than surmise or conjecture," we would conclude that no relief is due. Appellant's Brief at 17.

It is well-settled that "a victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime." *Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (citing *Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007) (holding that the evidence was sufficient to establish the identity of the robber/burglar where "the complainant identified [the a]ppellant, in open court, as one of the men that entered his home"); *Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978) ("[I]t is settled that a positive identification by one witness is sufficient for conviction.")). Here, Grimsley identified Appellant in court as the person who shot him. *See* N.T. Trial, 2/29/24-3/4/24, at 90-91. Additionally, Grimsley also identified Appellant as the person who shot him in a photographic array shown to him days after the shooting.

Moreover, this case is distinguishable from the decision on which Appellant relies, *Commonwealth v. Bennett*, 303 A.2d 220 (Pa. Super. 1973) (*en banc*). There, Bennett was convicted of receiving stolen property based on the theft of a vehicle she was found driving. *Id.* at 220. Bennett's conviction was premised solely on the testimony of her passenger in the car, Harry Jones, who had confessed to stealing the car. Jones "sought to implicate [Bennett] by giving several wholly different, conflicting and inconsistent versions of when and how he had told her that the car had been in fact stolen by him." *Id.* "With each new version[,] Jones would recant the previous one

- 7 -

and protest that the newest version was in fact the true one." *Id.* at 220-21.

The *Bennett* panel held that

> [t]his situation presented the jury not with a mere conflict or contradiction in testimony which was reasonably reconciled by them, but a situation falling within the rule: "… a case should not go to the jury where the party having the burden offers testimony of a witness, or of various witnesses, which is so contradictory on the essential issues that any finding by the jury would be a mere guess…[.] When the testimony is so contradictory on the basic issues as to make any verdict based thereon pure conjecture[,] the jury should not be permitted to consider it[.]"

*Id.* at 221 (citation omitted).

Here, unlike in *Bennett*, Grimsley's pre-trial statements and his trial testimony that Appellant was the person who shot him were not so contradictory or conflicting as to indicate that the court's reliance thereon was a 'mere guess.' Grimsley did not recant his identification of Appellant as the person who shot him, once he made that identification shortly after the shooting. As the trial court observed, "[w]hile there may have been inconsistencies with respect to [Grimsley's] statements to responding officers and hospital personnel" just after he was shot in the chest, those discrepancies were not shocking, considering that Grimsley "was suffering from his injuries at [the] time those statements were … made." TCO at 6. Moreover, "[a]fter his physical condition was stabilized, Grimsley identified his assailant as being the individual known to him as Joe; selected [Appellant's] photograph from the photo array; and provided his physical description to detectives." *Id.* at 6-7. The trial court concluded that, "[t]aking this testimony as a whole, this [c]ourt found it to be credible." *Id.* at 7. Reconciling inconsistencies in

witness testimony and making credibility determinations are solely within the province of the fact-finder, which in this case was the trial court. *See Commonwealth v. Simmons*, 662 A.2d 621, 630 (Pa. 1995) ("After examining the evidence in this case, we find that [the] appellant's assertion that the inconsistencies in the witnesses' testimony rendered them incredible to have no merit since the inaccuracies claimed are only minor and a witness's credibility is solely for the [fact-finder] to determine."). Given this record, including Grimsley's out-of-court identification of Appellant from a photo array and his in-court identification of Appellant at trial, we would conclude that the evidence was sufficient to prove Appellant's identity as the person who shot Grimsley.

Judgment of sentence affirmed.

President Judge Emeritus Panella joins this memorandum.

Judge McLaughlin files a concurring memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/12/2025