J-S78003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DOMINICK WHITE | : | |
| | : | |
| Appellant | : | No. 436 EDA 2018 |

Appeal from the Judgment of Sentence September 29, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008747-2016

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 24, 2019**

Dominick White appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury found him guilty of robbery[1], conspiracy to commit robbery[2], and theft by unlawful taking[3]. Counsel has petitioned this Court to withdraw from his representation of White pursuant to **Anders** and **Santiago**.[4]   Upon review, we affirm White's judgment of sentence and grant counsel's petition to withdraw.

The trial court set forth the facts of this case as follows:

_____

[1] 18 Pa.C.S.A. § 3701.

[2] 18 Pa.C.S.A. § 903.

[3] 18 Pa.C.S.A. § 3921.

[4] **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

_____

\* Former Justice specially assigned to the Superior Court.

Mr. Jackson[, (complainant),] testified that, on May 21, 2015, at approximately 11:15 p.m., he had just returned home from his work shift at the Fresh Grocer Supermarket; he was 19 years old at the time. After changing out of his work clothes, Mr. Jackson went outside to sit on the front steps of his home, located at 806 North 16th Street, near Poplar Street, in Philadelphia. While speaking with his girlfriend on the telephone, Mr. Jackson felt a hard metal object being pressed against the back of his neck. At first, he thought it was one of his cousins or his little brother playing a joke on him, but when he turned around he realized it was not a joke. Mr. Jackson described the assailant as an 18 [to ]19[-]year[-]old, dark[-]skinned, African-American male, wearing a black hoodie and cargo pants. This male grabbed [Mr. Jackson] by his hood and ordered him into the entrance of an adjacent alleyway. As Mr. Jackson was complying, he observed [White]-- whom he would describe to police as a light-skinned male wearing a black hoodie and black jeans with shoulder-length dreadlocks-- walking toward him from the street. The male with tan pants ordered Mr. Jackson to remove his clothing. When Mr. Jackson did not immediately comply, the male struck him in the face with the butt of his handgun. Mr. Jackson then removed his shirt, jeans and sneakers, while [White], who was brandishing a black semiautomatic handgun, "stood guard" a few steps away.

Mr. Jackson testified that after stripping down to his underwear, [White] and his cohort made him lie down on the ground. [White's] cohort took Mr. Jackson's cell phone and rummaged through his clothing; as he was doing this, [White] asked Mr. Jackson, "Do you have any bread?" Mr. Jackson responded in the negative, stating that all his money was in the bank. When [White] and his cohort realized that Mr. Jackson did not have any money, they threw his clothing and his sneakers over the fence of an adjacent property. The males then ordered Mr. Jackson to lie still for ten seconds, "Or we [sic] going to blow your brains out."

Mr. Jackson testified that he [laid] still for ten seconds. When [White] and his cohort [were] no longer [] in sight, he climbed over the fence to retrieve his clothing; he found his shirt and jeans, but could not find his sneakers. Still in his underwear, Mr. Jackson entered his home, where his mother immediately asked, "What is going on?" Mr. Jackson explained what had just occurred, and called the police, who arrived within five minutes.

Mr. Jackson testified that he flagged down the officer--Officer Jeffrey Holden--and told him that he had just been robbed. Mr. Jackson reported that his assailants had taken his white Galaxy S4 cell phone and provided a "good description" of them. Officer Holden relayed the description over the police radio, and told Mr. Jackson to "hop in" so that they could drive through the area and try to find them. After patrolling the area for a few minutes, Officer Holden transported Mr. Jackson a few blocks from the crime scene, where four suspects had been stopped. Mr. Jackson took one look at them and "automatically knew that wasn't them." Officer Holden and Mr. Jackson then proceeded to Girard Avenue, where they encountered three males--two of whom were [White] and his cohort.

Mr. Jackson testified that when Officer Holden stopped his police cruiser (bringing it into view), each of the three males immediately "took off [running] in their own direction." More specifically, the male in the tan cargo pants ran in the opposite direction of the third male, while [White] ran into a nearby Chinese store. Mr. Jackson remained in the police car while Officer Holden ran into the Chinese Store, returning with [White]. Mr. Jackson positively identified [White] as his assailant. Officer Holden then recovered a white Samsung Galaxy S4 phone from [White's] pocket. Mr. Jackson initially was unsure if it was his phone because his phone was "brand new" when it was taken from him, whereas the phone recovered from [White] had a shattered screen and "the back piece was missing." However, once the phone was turned on, a big picture of Mr. Jackson's mother popped up on the screen. As he put it "[t]hat's when I knew it was my phone." Officer Holden then transported [White] and Mr. Jackson to the police station, where Mr. Jackson provided a statement to detectives.

Finally, Mr. Jackson testified that in addition to positively identifying [White] on the street, he positively identified him at the preliminary hearing, and once again at trial without any equivocation:

> Q.  And as we sit here today, how confident are you that this defendant right here is the person that took you into the alley and held you at gunpoint and robbed you of your phone?
>
> A.  100 percent.

Philadelphia Police Officer Jeffrey Holden testified next for the Commonwealth. Officer Holden testified that, on May 21, 2015, at 11:26 p.m., he received a police radio call for "robbery in progress" at 16th and Reno Streets. Officer Holden, who was one block away from that location, arrived at the scene, where he encountered Mr. Jackson, waiving and [] flailing his arms. Officer Holden told Mr. Jackson to calm down, get in the passenger's seat, and describe the assailants. Officer Holden recorded the description as two males between 20 and 35 years old, one wearing a black pullover hoodie with tan cargo pants, and the other wearing a black hoodie and black jeans with dreadlocks. After relaying that information over police radio, he and Mr. Jackson started to canvass the area, driving only 5 to 10 miles per hour. Officer Holden noted that, since it was a Wednesday night, there were not many people out. At approximately 11:42 a.m., police broadcast that two suspects were stopped outside a bar at 17th and Fairmount Avenue. Officer Holden proceeded to that location, where Mr. Jackson took one look at the males and stated, "No, those are not the guys that robbed me."

Following the above encounter, Officer Holden proceeded westbound on Fairmount Avenue until 25th Street, where he turned right and proceeded northbound until Poplar Street; he then drove two blocks westbound on Poplar until 27th, where he turned northbound toward Girard Avenue. Officer Holden testified that as soon as he turned onto 27th Street, he saw two males walking side by side--one wearing a black hoodie and tan cargo pants and the other wearing a black hoodie and black pants with dreadlocks--along with a third male walking several steps behind them. At that point, Officer Holden asked Mr. Jackson, "Are these the guys?" Mr. Jackson looked at them and said, "Yes, that's them." Officer Holden then radioed for backup and proceeded to the corner of 28th and Girard. [White] and his cohort both looked over their shoulders and, upon seeing the police car, took off in different directions. [White] ducked inside a Chinese store located at 2817 Girard Avenue. Officer Holden pursued [White] into the store, and with his gun drawn, ordered [White] to get down; [White] complied and was taken into custody. Officer Holden recovered a cell phone with a detached battery from [White's] front pants pocket. Upon turning on the phone, a picture of Mr. Jackson's mother appeared on the screen.

Trial Court Opinion, 10/11/18, at 2-5 (citations and footnotes omitted).

On June 22, 2017, White was convicted by a jury of the above offenses. On September 29, 2017, the court sentenced him to an aggregate term of 6-12 years' incarceration. Appellant filed a *pro se* motion for reconsideration of sentence, which was denied by the trial court on February 2, 2018.[5] That same day, appellant's then-attorney filed a timely notice of appeal. Appellant's current counsel thereafter filed a Pa.R.A.P. 1925(c) statement in which he notified the trial court of his intent to file an **Anders** brief.

In seeking to withdraw from representation, counsel's **Anders** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).

Additionally, counsel must furnish a copy of the brief to Appellant, advise him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention, and attach to the **Anders**

---

[5] In this Commonwealth, hybrid representation is not permitted. **See Commonwealth v. Jette**, 23 A.3d 1032, 1036 (Pa. 2011). Thus, any *pro se* post-sentence motion filed while a defendant is still represented by counsel is a nullity, having no legal effect. **Commonwealth v. Piscanio**, 608 A.2d 1027, 1029 n.3 (Pa. 1992). Here, White had no right to file a *pro se* motion for reconsideration of his sentence, as he was still represented by trial counsel at the time the document was filed. It is unclear from the record why the trial court addressed White's *pro se* motion under these circumstances.

petition a copy of the letter sent to the client.  ***Commonwealth v. Daniels***, 999 A.2d 590, 594 (Pa. Super. 2010).

Instantly, counsel's petition states that he has made an examination of the record and concluded the appeal is wholly frivolous.  Counsel indicates that he supplied White with a copy of the brief and a letter explaining his right to proceed *pro se*, or with privately-retained counsel, and to raise any other issues he believes might have merit.[6]  Counsel has also submitted a brief, setting out the two issues raised by White and, pursuant to the dictates of ***Santiago***, explains in his petition to withdraw why he believes the appeal to be frivolous.  Thus, counsel has substantially complied with the requirements for withdrawal.

Counsel having satisfied the procedural requirements for withdrawal, this Court must conduct its own review of the proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous. ***See Commonwealth v. Yorgey***, 188 A.3d 1190, 1196 (Pa. Super. 2018).

White raises the following issues for our review:

1. The evidence was insufficient to sustain the convictions because the identification of [White] by the complaining witness was erroneous.

2. The verdicts were against the weight of the evidence because of the many inconsistencies in the testimony of the complaining witness regarding his description of the robber he [identified] as [White].

---

[6] White has not submitted any supplemental filings to this Court in response to counsel's letter.

- 6 -

***Anders*** Brief, at 12.

White first challenges the sufficiency of the evidence. Where an appellant raises such a challenge,

> [t]he standard we apply in reviewing the [claim] is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Vargas***, 108 A.3d 858, 867-68 (Pa. Super. 2014) (citation omitted).

White's sole argument in support of his sufficiency claim is that the victim's identification of him as the assailant is erroneous. This, however, is a credibility argument that goes to the weight, not the sufficiency, of the evidence. ***See Commonwealth v. Gibbs***, 981 A.2d 274, 281-82. (Pa. Super. 2009). In any event, our review of the record reveals that there was sufficient evidence for the jury to find that Jackson was accosted by two men, one of whom was White. Jackson was able to dismiss other suspects as the culprits and repeatedly identified White as his assailant. Furthermore, White personally demanded money, or "bread," from Jackson during the robbery. Moreover, there was evidence tending to show that White worked in concert

with another robber. Accordingly, the evidence is not "so weak and inconclusive that as a matter of law no probability of fact may be drawn." *Vargas*, 108 A.3d at 867. Therefore, there was more than sufficient evidence to convict White of robbery, conspiracy to commit robbery, and theft by unlawful taking.

White also claims that the verdict was against the weight of the evidence. Specifically, he asserts that there were inconsistencies in the description of the assailant. White has waived this claim.

To preserve a challenge to the weight of the evidence, a litigant must raise the claim: (1) orally on the record at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion. Pa.R.Crim.P. 607. Failure to do so results in waiver of the claim for purposes of appellate review. *Commonwealth v. Mack*, 850 A.2d 690, 694 (Pa. Super. 2004) (failure to raise weight claim before trial court results in waiver, even where trial court addresses claim on merits). Here, White failed to preserve his challenge to the weight of the evidence in the manner required pursuant to Rule 607. Accordingly, the claim is waived.

Even if White had properly preserved the claim, however, he would be entitled to no relief.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the

credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Here, the jury reasonably found that White robbed Jackson. Even though Jackson did not note White's facial tattoos, the jury could have reasonably found Jackson to be credible, and infer guilt from White's possession of Jackson's cell phone within 30 minutes of the time of the robbery in the same geographical area. Contrary to White's assertion, Jackson consistently identified White as his assailant: he identified White on the night of the incident, at a pretrial hearing, and again at trial. Furthermore, Jackson's testimony was corroborated by that of Officer Holden. The sole evidence offered by White was his own testimony that he bought the phone for $10 immediately before he was arrested. ***See*** N.T. Trial, 9/29/17, at 166-67. However, "the jury is free to believe all, part, or none of the evidence." ***Id.*** It does not shock one's sense of justice that the jury did not find White to be a credible witness. Accordingly, the court did not abuse its discretion in finding White's weight claim to be without merit.

We have undertaken a thorough examination of record and concluded there are no non-frivolous issues to be raised on appeal. ***Yorgey***, ***supra***.

Accordingly, we affirm White's judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/19