463 A.2d 444

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William J. KELLY.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 1982.

Filed July 22, 1983.

Petition for Allowance of Appeal Denied Nov. 4, 1983.

440

Eric B. Henson, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

Nicholas J. Nastasi, Philadelphia, for appellee.

Before CERCONE, President Judge, and BROSKY and BECK, JJ.

CERCONE, President Judge:

Appellee, William J. Kelly, a former Philadelphia police officer, was found guilty by a jury of three counts of perjury,[1] one count of Obstruction of Justice,[2] and one count of Bribery.[3] He was sentenced to concurrent terms of three to twenty-three months imprisonment on each charge of Perjury. On direct appeal, this court affirmed appellee's judgment of sentence. Our Supreme Court granted a petition for allowance of appeal; it affirmed. Appellee then filed an appeal under 28 U.S.C.A. § 1257(2) in the United States Supreme Court. That court dismissed the appeal for want of jurisdiction and also denied certiorari, treating the pleading alternatively as a petition for a writ of certiorari.

1. 18 Pa.C.S.A. § 4902.

2. 18 Pa.C.S.A. § 5101.

3. 18 Pa.C.S.A. § 4701.

At his trial and before this Court, appellee was represented by Anthony D. Pirillo, Esquire. Alfonso Tumini, Esquire, pleaded appellee's case before the Pennsylvania Supreme Court. Both attorneys were retained by the Philadelphia Fraternal Order of Police as part of its service for the defense of accused police officers, during the pendency of appellee's case. Appellee filed a petition and also an amended petition pursuant to the Post Conviction Hearing Act[4] in which he alleged that the contractual relationship between his attorneys and the Fraternal Order of Police denied him effective assistance of counsel. Appellee asserted that a conflict of interest tainted his attorneys' representation of him. In particular, he argued that Mr. Pirillo's representation of other officers prevented him from recommending that appellee cooperate and assist the Special Prosecutor because such a recommendation might implicate Pirillo's other clients. After a hearing on the allegations in the petition, the lower court granted appellee's requested relief of a new trial.

The Commonwealth appealed, urging that appellee has waived the conflict issue because of a colloquy in which appellee participated prior to his appearance before the grand jury. The Commonwealth also asserts that no conflict of interest existed in appellee's attorney's representation of him as well as other police officers, any more than it exists by appellee's current representation by an attorney who is also retained by the Fraternal Order of Police. Because we find that the lower court erred in vacating the judgment of sentence and in granting a new trial, we reverse the order of the lower court.

Our task in reviewing the decision of the lower court is limited to a determination of whether the findings of the court are supported by the record. *Commonwealth v. May*, 296 Pa.Superior Ct. 435, 442 A.2d 1129 (1982). We find no error in the lower court's conclusion that appellee has not waived the instant issues in failing to raise them at

4. 42 Pa.C.S.A. § 9541, et seq.

an earlier stage in the proceedings.[5] Rather, we find that, contrary to the lower court's conclusion, multiple representation was not present in this case such that it would give rise to a possibility of harm to appellee. Consequently, we decline to find that appellee was denied his right to effective assistance of counsel when he was defended by Mr. Pirillo.

■ The test for determining whether appellee was afforded effective assistance of counsel was set forth in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Counsel must be shown to have had some reasonable basis designed to effectuate his client's interests by his representation. The United States Supreme Court dealt with allegations of ineffective assistance of counsel in the context of a purported conflict of

5. Prior to appellee's testimony before the grand jury, a waiver of his right to conflict-free counsel was attempted through a colloquy conducted by the prosecutor. We are reluctant to credit this colloquy with the panoply of guarantees which are necessary for a knowing and voluntary waiver. For as our Supreme Court commented on another similar colloquy:

... The witnesses argue that because they have chosen the particular attorney and his associate knowing full well that the attorneys represent all of the policemen subpoenaed and because the attorneys have, as fully as possible, advised the witnesses of the potentiality of the conflicts involved, therefore the witnesses have waived their constitutional right to effective counsel. *Such waiver may very well be defective on the ground that it is not a knowing and intelligent waiver; the client may not be fully and adequately informed as to the nature of the potential conflict, because, in this instance, full disclosure to the client, as required by the Code of Professional Responsibility, DR 5–105(C), may be impossible in light of the requirements of secrecy surrounding the grand jury proceeding.*

*Pirillo v. Takiff,* 462 Pa. 511, 525, 341 A.2d 896, 902–3 (1975), *aff'd on rehearing per curiam,* 466 Pa. 187, 352 A.2d 11, *cert. den.* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976).

In addition, appellee has not waived his contentions by failing to raise them at an earlier stage in the proceedings. His attorney on appeal, Mr. Tumini, was a close associate of Mr. Pirillo, who testified at the PCHA hearing that he considered Kelly's case as still one of Pirillo's. We cannot expect Tumini to have raised Pirillo's ineffectiveness in this situation. *Cf. Commonwealth v. Grassmyer,* 266 Pa.Superior Ct. 11, 402 A.2d 1052 (1979).

interest in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). There the court stated

Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *Id.* at 347, 100 S.Ct. at 1719.

Our own Supreme Court granted the Commonwealth's petition for allowance of appeal in *Commonwealth v. Pinhas*, 496 Pa. 210, 436 A.2d 618 (1981), in order to consider the case in light of *Cuyler v. Sullivan, supra*. The Court found that an actual conflict of interest was present in appellee's case by the fact that a plea bargain was negotiated by sole counsel for three defendants on the condition that it be accepted by all three. The plea bargain was acceptable to two, but not to the third. Such evidence the Court said was conclusive of a conflict of interest such that the defendant was denied his Sixth Amendment right to effective assistance of counsel by counsel's continued multiple representation.

▪ Thus, what we must search for in the proceedings below is the presence of an *actual conflict of interest*. This manifests itself by a showing of a possibility of harm to the defendant. Actual harm need not be shown. *Commonwealth v. Breaker*, 456 Pa. 341, 318 A.2d 354 (1974). Ethical consideration 5–14 of the Code of Professional Responsibility, adopted by the Supreme Court of Pennsylvania on February 27, 1974, provides some guidance:

Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

*See also Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 176 A.2d 641 (1962) and *Commonwealth v. Wilson*, 429 Pa. 458, 240 A.2d 498 (1968).

The lower court found that defendant met his burden of demonstrating a possibility of harm in that by Mr. Pirillo's representation of all members of the F.O.P., he was privy to confidential information which impeded his full representation of appellee. While it is true that Mr. Pirillo represented appellee as well as other officers before the grand jury, it is also true that only appellee was indicted by the grand jury. So, by the time of trial, only Kelly, the appellee, was a client of Mr. Pirillo's, although he had represented the following officers in their appearances before the grand jury: Grawl, Candito, Cole, Dougherty, Zongalawitz and Haggerty. Thus, this case does not present the usual multiple representation problems. No one but Kelly was being tried as a result of his grand jury appearance. Indeed, no one but Kelly was charged. We fail to see the conflict inherent in this situation as such.

The lower court found a conflict was visible in Mr. Pirillo's failure to call one of these officers, Dougherty, as a witness in the defense of his client. However, our review of the trial record does not support this conclusion. The chief witness against Kelly was one Joseph Narcise who testified as to five separate occasions of bribery by Kelly. However, Dougherty was present with Kelly on only two of those occasions, and these were not those for which Kelly was being tried at that time.[6] We fail to see how calling Dougherty to corroborate Kelly's defense would have been possible, given the fact that Dougherty was not alleged to have been present during the bribery charges at issue at trial. This fact is not contradicted by Mr. Pirillo's explanation as to why he refused to call Dougherty as a defense witness. This exchange occurred at the Post Conviction hearing:

Q. [by Mr. Nastasi] You also learned that Mr. Narcise was claiming that Officer Dougherty took bribes?

A. [by Pirillo] Yes.

**6.** Narcise testified that he gave both Kelly and Dougherty $50 to get a notebook page back after a raid on Domenick DiBernardino's house. Also, when Narcise hit on the numbers, he said he paid Kelly and Dougherty $75.00.

Q. The fact that you did not call Dougherty, sir, can you tell us now at this time what your reason for not calling him was? Do you recall it?

A. Only could be because of one or two reasons. I don't recall specifically now but it would either—

Q. I'm not asking you to speculate. I'm asking you if you remember.

A. Do I recall why I didn't call him? No, I don't recall exactly.

. . . . .

A. I had that happen once in one of the Special Prosecutor cases and I just don't remember which case it was in but I think that what you're essentially asking me is did I not call Officer Dougherty because I thought it might put Officer Dougherty in trouble and I can't honestly say that. If I didn't call Officer Dougherty, I didn't call Officer Dougherty because it was a tactical decision for the benefit of the case I was trying at the moment and I just couldn't do it any other way.

. . . . .

Q. [by Mr. Ryan, Assistant District Attorney]: Now you stated on direct examination that you did not recall the precise reason why you didn't call Officer Dougherty. According to your general practice, why would you not have called a witness for Mr. Kelly in this case?

A. [by Mr. Pirillo]: Well, I would not call a witness if I thought either his story would be unbelievable and therefore would hurt my client or if I thought his testimony might be damaging to my client or if I thought in some cases if he had nothing to add I just wouldn't call a man for the sake of calling another witness. Any one of a number of reasons why you wouldn't call a witness.

■ Contrary to the lower court, we are unable to find any support for its conclusion that there was no reasonable

basis for Pirillo's failure to call officer Dougherty as a witness for Kelly. Because his testimony would have been irrelevant, we cannot agree that Dougherty would have been relevant to rebut Narcise's testimony. Furthermore, the record establishes, contrary to the lower court's finding, that Dougherty was not represented by Pirillo at the time of Kelly's trial. It is too speculative a matter for any court to conclude, as did the lower court that "[i]n not calling Officer Dougherty, Mr. Pirillo shielded him from the dangers of impeachment and possible reindictment, but in the eyes of this court, sacrifices his client's best interests." Thus, as to Pirillo's failure to call Dougherty at trial, we decline to attribute this to Pirillo's ineffectiveness, absent any evidence that the decision not to call him resulted from a conflict of interest. The record is devoid of such evidence.

■ Appellee cites *Glasser v. U.S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) in support of his assertion that Pirillo limited his cross-examination of prosecution witness, Lieutenant Cole, whom Pirillo had also represented before the grand jury. (The lower court does not comment on this assertion.) In *Glasser*, the Supreme Court found an impermissible actual conflict of interest was present when defense counsel failed to cross-examine a prosecution witness whose testimony linked the defendant, but not his jointly represented co-defendant, with the crime, and when the attorney failed to object to the admission of arguably inadmissible evidence against him which likewise was conflict related. This case does not come close to *Glasser* in evidence of conflict.

Lieutenant Cole was called by the prosecutor because of his former position as superior to appellee Kelly. He was asked to verify paperwork which he approved that showed Kelly was involved in an arrest at a time when he swore on an affidavit for a search warrant that he was conducting surveillance of a bar. The record reveals that Pirillo did indeed cross-examine Cole aggressively. And when asked at the PCHA hearing whether his cross-examination was in

any way compromised by his prior representation of Cole, Pirillo answered:

> No, my recollection is now that I cut short my cross-examination of Lieutenant Cole because it was apparent from the manner in which he was answering that he was not the friendliest of witnesses and I figured before I force him into saying something which either was not so just for the sake of getting back at a guy who is cross-examining him, that I would just sooner cut the cross-examination short.

> . . . . .

> A matter of trial tactics, that's all.

This justification does not indicate the presence of any possibility of harm to appellee because of any prior representation of Cole.

Our review of the record convinces us that appellee did not meet his burden of proving actual conflict of interest giving rise to a possibility of harm to appellee in the proceedings below. On the contrary, defense attorney Pirillo represented his client actively and aggressively. Tactical decisions of attorneys in the defense of a client should not be interpreted as products of conflicting interests in the absence of more evidence than was elicited at the PCHA hearing. This is not the case in which one attorney representing two co-defendants, refused to call one to exonerate the other, which fact induced appellant to plead guilty. *Commonwealth v. Lantzy,* 284 Pa.Superior Ct. 192, 425 A.2d 768 (1981). Nor is it the situation in which counsel for one defendant neglected his co-defendant's case in order to afford the former a more spirited defense. *Commonwealth v. Rodrigues,* 285 Pa.Superior Ct. 579, 428 A.2d 197 (1981). As Mr. Justice Nix expressed it in his dissenting opinion in *Commonwealth v. Breaker,* 456 Pa. 341, 351, 318 A.2d 354, 359–360, "the duty of courts to assure full enjoyment of constitutional rights should not be confused with the conjuring of imaginary demons which serve only to impede law enforcement and frustrate justice." Our reading of the record persuades us that any conflict to be found

in Pirillo's representation of Kelly is to be found only in an imaginary realm.

Given the significant case of *Pirillo v. Takiff, supra,* it is necessary for us to comment on how it relates to the instant case. In *Pirillo v. Takiff,* our Supreme Court declined to issue a writ of prohibition to the supervising judge, Takiff, of a regular grand jury which was conducting a special investigation into bribe-taking by members of the Philadelphia police department. The judge disqualified Pirillo and his associate from representing twelve witnesses which were subpoenaed to testify before the grand jury. (Kelly was not one of those witnesses.) In upholding Pirillo's disqualification by the lower court, the Supreme Court said:

Here, however, where each witness was a potential defendant, and the Court received information that the testimony of each officer might be expected to incriminate one or more of the other witnesses, and where the extent of the possible multiple cross-involvement in criminal activity is known to the Court but hidden from the individual witnesses by the requirements of secrecy, it is inappropriate for the supervising judge to permit multiple representation. *Pirillo v. Takiff,* 462 Pa. at 531, 341 A.2d at 906.

■ In *Pirillo, supra,* multiple representation of twelve witnesses was the issue. With the special prosecutor alleging that each officer would be asked to testify against the others, it was evident that a great possibility of harm redounded to each multiply-represented defendant. In the instant case, there is no issue of multiple representation. And it is well-settled that even multiple representation alone does not amount to a conflict of interest. *Commonwealth v. Wilson,* 429 Pa. 458, 240 A.2d 498 (1968). It is Pirillo's conduct of Kelly's defense which is being challenged as ineffective because tainted by prior representation of other officers. We cannot extend the holding of *Pirillo v. Takiff, supra,* to such a degree.

■ The Supreme Court also found danger inherent in the fact that the F.O.P. paid the officers' legal fees since the

organization may have interests adverse to the best interests of the testifying officers. More specifically, the F.O.P. had adopted a tactic of noncooperation, which tactic is inimical to the rights of any witnesses who might stand to gain from a strategy of cooperation with the Special Prosecutor's Office. However, in the instant case, appellee has not argued that he was desirous of cooperating in this way but was dissuaded, and Pirillo himself testified that he never advised Kelly not to cooperate with the Special Prosecutor or the Crime Commission. Thus, the special dangers of *Pirillo v. Takiff, supra*, are not present in the instant case. That case is readily distinguishable from the instant case.

Therefore, for the reasons enumerated above, the order of the lower court is reversed and the judgments of sentence are hereby reinstated.

BECK, J., concurs in the result.