515 A.2d 605

**COMMONWEALTH of Pennsylvania**

v.

**Michael J. SZEKERESH, Appellant.**

Superior Court of Pennsylvania.

Submitted May 27, 1986.

Filed Sept. 23, 1986.

150

Leonard I. Sharon, Pittsburgh, for appellant.

James A. Nelson, Assistant District Attorney, Edensburg, for Commonwealth, appellee.

Before WICKERSHAM, JOHNSON and WATKINS, JJ.

JOHNSON, Judge:

We are asked to determine whether we should extend the rule of law promulgated in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), which grants a defendant a new trial after he has shown that he has suffered actual harm and actual prejudice arising from a conflict of interest in his representation following a pre-trial colloquy and subsequent waiver of his Sixth Amendment rights. Appellant, Michael J. Szekeresh, asks us to extend

this rule to include the situation where the pre-trial colloquy informs the defendant of the specific risk of forfeiture of waiving a right, and subsequently that the specific risk created a conflict of interest which resulted in actual harm and actual prejudice. We decline to do so.

Szekeresh, in appealing from the September 20, 1985 Order denying a hearing under the Post Conviction Hearing Act,[1] claims that his trial counsel rendered ineffective assistance. He argues that despite a pre-trial waiver of prospective conflicts, his ineffectiveness eminates from an actual conflict of interest which adversely affected trial counsel's performance. Szekeresh also contends that the PCHA Court erred in denying him the opportunity to present evidence in support of his recusal motion. We disagree and, accordingly, affirm the September 20, 1985 Order.

Appellant was tried before a jury along with six other defendants. Appellant was convicted of both conspiracy to commit aggravated assault and aggravated assault. At trial, Louis LaLumere, Esquire, undertook the defense of six of the seven defendants, including Appellant. A pre-trial colloquy was conducted by the Honorable Joseph O'Kicki in which each of the six defendants accepted LaLumere's joint representation. LaLumere sought generally to defend his clients on a theory that the police officers involved had instigated the incident. Each defendant claimed self defense or defense of a third person. In an effort to preclude expert medical testimony on the nature and extent of the injuries sustained by the police officers, LaLumere entered into a stipulation which admitted that the injuries received were serious bodily injuries as defined by 18 Pa.C.S. § 2702, Aggravated Assault.

First we will address Szekeresh's arguement that a conflict of interest arose which adversely affected his trial counsel's performance. The conflict, he argues, was caused by LaLumere's general defense for all six defendants, coupled with the stipulation which prevented counsel from

1. 42 Pa.C.S. § 9541 *et seq.*

presenting an individualized defense on behalf of Szekeresh. Appellant contends that an individualized defense raised on his behalf would have reduced the charges against him to simple assault.

Both the trial court and the Commonwealth rely on the appeals of co-defendants Kenneth Swope and Phillip Brosch in stating that the issue raised by Szekeresh concerning conflict of interest has been dealt with by this Court twice before. *Commonwealth v. Swope*, 339 Pa.Super. 621, 488 A.2d 1167 (1984) (per curiam order); *Commonwealth v. Brosch*, 341 Pa.Super. 611, 491 A.2d 915 (1985) (per curiam order). Both the Swope and Brosch appeals concerned themselves with the question of whether the appellant's therein had executed a knowing and intelligent waiver. We would be re-addressing the *Swope* and *Brosch* issue if, after a knowing and intelligent waiver, we were merely concerned with whether Appellant is entitled to a new trial upon a showing of actual harm and actual prejudice.

Appellant does assert that after the pre-trial colloquy and waiver he suffered actual harm and actual prejudice. This harm and prejudice, he maintains, resulted from a post-waiver conflict of interest. The difference here is that the alleged harm and prejudice resulting from the conflict of interest were risks of which he was specifically informed during the colloquy. Thus, the question facing this Court is whether such an Appellant is entitled to a new trial. The critical determination which we must make is whether this claim of counsel's ineffectiveness, allegedly resulting from a conflict of interest, supersedes Appellant's waiver.

■ We find no merit in Appellant's argument because he waived his right to individual representation. He did so after being informed of the specific risks involved in joint representation.

■ An individual may knowingly and intelligently waive a constitutional right. *Commonwealth v. Carey*, 235 Pa.Super. 366, 340 A.2d 509 (1975). For that individual to be able to make a knowing and intelligent waiver of a

constitutional right, he must have been aware of both the nature of the constitutional right and the risk of forfeiting the same. *Commonwealth v. Coleman,* 477 Pa. 400, 383 A.2d 1268 (1978); *Commonwealth v. Johnson,* 319 Pa.Super. 463, 466 A.2d 636 (1983). In such a situation the record must clearly demonstrate an intentional relinquishment of a known right or privilege. *Commonwealth v. Hill,* 492 Pa. 100, 422 A.2d 491 (1980). If all of the necessary information concerning the nature of and risk of forfeiture of the constitutional right is communicated to the individual, his waiver will not be disturbed. *Commonwealth v. Carey,* 235 Pa.Super. 366, 340 A.2d 509 (1975). Moreover, the Commonwealth merely needs to establish a knowing and intelligent waiver of a constitutional right by a preponderance of the evidence. *Commonwealth v. Scarborough,* 491 Pa. 300, 421 A.2d 147 (1980); *Commonwealth v. Roberson,* 485 Pa. 586, 403 A.2d 544 (1979).

Appellant does not deny that he was present during Judge O'Kicki's colloquy concerning LaLumere's joint representation. He does, however, appear to be claiming that Judge O'Kicki's colloquy was inadequate to inform him of all the risks of forfeiting his right to representation by his own individual attorney. In essence, he is arguing that he was not made fully aware of the possibility that LaLumere's joint representation might result in the preclusion of certain defenses being asserted on his behalf. Thus, he argues that he was not adequately informed, and therefore, accepted LaLumere's joint representation. Consequently he alleges that he suffered actual harm and actual prejudice. We find no evidence in the record to support Appellant's position.

The record clearly shows that Appellant made a knowing and intelligent waiver of his right to individual representation, and that he accepted the consequences arising therefrom. He was aware of his right to separate counsel. The risks of forfeiting this right were made clear. N.T., 8/5/80 at 6–9. Judge O'Kicki conveyed all the necessary information, and specifically addressed the possibility

that joint representation could result in the preclusion of a specific defense for an individual defendant. N.T., 8/5/80 at 8. At the end of this colloquy, all six defendants, including Appellant, knowingly and intentionally accepted LaLumere's joint representation.

█ Circumstances might be different where there is no colloquy or where the colloquy did not inform the defendants of a particular risk of forfeiture and where that specific risk created a conflict of interest which resulted in actual harm. But where the colloquy fully apprises the defendants of the specific risk involved, a claim on appeal that this risk created a conflict of interest resulting in actual harm will not succeed. The focal point of this analysis is whether the Appellant made an informed decision.

In discussing the scope of and the protections afforded by the Sixth Amendment, and the waiver of these rights, the United States Supreme Court has focused on whether the decision to waive these rights was an informed one. As that Court stated in *Cuyler v. Sullivan, supra:*

> The vital guarantee of the Sixth Amendment would stand for little if the often *uninformed* decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection.

*Cuyler v. Sullivan, supra,* 446 U.S. at 344, 100 S.Ct. at 1716, 64 L.Ed.2d at 344. (emphasis added). We find, as a matter of law, that the waiver of the right to separate counsel is not superseded by any alleged conflict arising after such an informed decision.

In the present case, the pre-trial colloquy on joint representation fully informed the defendants of the specific risks of forfeiture which are now being claimed on appeal to have resulted in a conflict of interest. The differences between this case and those cases cited by Appellant in support of his position, are readily apparent. In *Cuyler v. Sullivan, supra.,* the trial court did not conduct a pre-trial colloquy inquiring into whether the defendant appreciated the dangers of joint representation. In *U.S. v. Fahey,* 769 F.2d 829

(1st Cir.1985), the trial court did inform the defendant that the prosecution was afraid that defense counsel would be reluctant to call his former law partner as a witness. The court also informed the defendant that a potential conflict of interest could arise between former partners where one partner is defense counsel and the other partner is a witness. *Id.* There is, however, a cognizable difference between the impact on a defendant's knowledge of informing him that a conflict may exist and may result in the failure to call a witness, versus the impact on his knowledge when he is informed that a conflict may arise and may result in the preclusion of a defense in his favor. The latter more clearly apprises the defendant that the risk involved may directly impact the outcome of his case.

Both *Commonwealth v. Davis*, 309 Pa.Super. 297, 455 A.2d 168 (1983), and *Commonwealth v. Evans*, 306 Pa.Super. 25, 451 A.2d 1373 (1982) are cases involving clear conflicts of interest arising from inconsistent defenses. In each case, however, as in *Cuyler v. Sullivan, supra.*, there was no pre-trial colloquy addressing and informing the defendants of the risks involved with joint representation. In *Commonwealth v. Kelly*, 316 Pa.Super. 438, 463 A.2d 444 (1983), this Court confronted a situation where there was a pre-trial colloquy addressing the dangers of joint representation. The distinguishing characteristic of *Kelly*, as pointed out by this Court, is that the colloquy may not have adequately informed the defendant of the nature of the potential conflict because the full disclosure that is required may have been impossible in light of the requirement of secrecy surrounding a grand jury proceeding. *Id.*, 316 Pa.Superior Ct. at 448, 463 A.2d at 446. The other cases cited by Appellant in support of his position are also inapposite. In *Bush v. U.S.*, 765 F.2d 683 (7th Cir.1985), *State v. Clay*, 474 So.2d 447 (La.App. 4th Cir.1985) and *Smith v. State*, 172 Ga.App. 6, 321 S.E.2d 771 (1984), the courts were not concerned with the issue of whether a defendant was inadequately informed as a result of either no pre-trial colloquy, or an inadequate colloquy.

We find that Szekeresh made a knowing and intelligent waiver. Moreover, we find that the pre-trial colloquy, after which he made a knowing and intelligent waiver, adequately informed him of the specific risks involved in joint representation. Thus, we find that his claim of ineffective assistance based upon the alleged conflict of interest does not supersede the knowing and intelligent waiver because he was adequately informed of the specific risk involved. Accordingly, we affirm the Order denying a post-conviction hearing.

Because of our disposition of Szekeresh's first issue, we find it unnecessary to address his second issue of whether the trial court erred in denying him the opportunity to present evidence to support his recusal motion and in denying that motion.

Order affirmed.