J-A10041-26

J-A10042-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AMEEN HURST | : | |
| | : | |
| Appellant | : | No. 920 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008498-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AMEEN HURST | : | |
| | : | |
| Appellant | : | No. 921 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008506-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AMEEN HURST | : | |
| | : | |
| Appellant | : | No. 922 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008530-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-A10041-26

J-A10042-26

|  | : |  |
| --- | --- | --- |
| v. | : | |
|  | : | |
|  | : | |
| AMEEN HURST | : | |
|  | : | |
| Appellant | : | No. 923 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008531-2021

|  | : | |
| --- | --- | --- |
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : | |
| v. | : | |
|  | : | |
|  | : | |
| AMEEN HURST | : | |
|  | : | |
| Appellant | : | No. 924 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008532-2021

|  | : | |
| --- | --- | --- |
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : | |
| v. | : | |
|  | : | |
|  | : | |
| AMEEN HURST | : | |
|  | : | |
| Appellant | : | No. 925 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008533-2021

|  | : | |
| --- | --- | --- |
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : | |
| v. | : | |

- 2 -

J-A10041-26

J-A10042-26

|  | : |  |
| --- | --- | --- |
|  | : |  |
| AMEEN A. HURST | : |  |
|  | : |  |
| Appellant | : | No. 926 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009769-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| AMEEN A. HURST | : |  |
|  | : |  |
| Appellant | : | No. 927 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009772-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
|  | : | PENNSYLVANIA |
|  | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| AMEEN HURST | : |  |
|  | : | No. 928 EDA 2025 |
| Appellant |  |  |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal
Division at No(s): CP-51-CR-0002800-2024

J-A10041-26

J-A10042-26

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 15, 2026**

Appellant, Ameen Hurst a/k/a Ameen A. Hurst,[1] appeals from the judgments of sentence entered on November 14, 2024, in the Court of Common Pleas of Philadelphia County following his open guilty pleas in nine separate criminal matters.[2] After our careful review, we affirm.

The relevant facts and procedural history are as follows: The Commonwealth initially filed eight Informations against Appellant[3] for crimes occurring from December 24, 2020, to March 18, 2021. Specifically, at lower court docket number 8498-2021, the Commonwealth charged Appellant with third-degree murder, firearms not to be carried without a license, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] We note that, in some of the captions provided to this Court, Appellant's name includes the middle initial of "A" while in some of the other captions Appellant's name includes no middle initial.

[2] Appellant filed a motion requesting that this Court consolidate his appeals. By order entered on September 25, 2025, this Court consolidated all of Appellant's appeals, except for 928 EDA 2025, which is the appeal from lower court docket number 2800-2024. After further consideration, we now consolidate all nine of Appellant's appeals, and we shall address the issues in the instant decision.

[3] We note Appellant was sixteen years old when he committed the crimes related to these eight criminal Informations.

- 4 -

possession of a firearm by a minor[4] in connection with the murder of Dyewou Scruggs on December 24, 2020; at 8530-2021, the Commonwealth charged Appellant with third-degree murder, conspiracy, and firearms not to be carried without a license[5] in connection with the murder of Naquan Smith on March 11, 2021; at 8532-2021, the Commonwealth charged Appellant with third-degree murder and conspiracy[6] in connection with the murder of a juvenile, T.B., on March 11, 2021; at 8531-2021, the Commonwealth charged Appellant with attempted murder and solicitation of murder[7] as to Charles Thomas on March 11, 2021; at 8533-2021, the Commonwealth charged Appellant with attempted murder and solicitation of murder[8] as to Mark Wilberforce on March 11, 2021; at 8506-2021, the Commonwealth charged Appellant with third-degree murder, conspiracy, and firearms not to be carried without a license[9] in connection with the murder of Rodney Hargrove on March 18, 2021; at 9769-2021, the Commonwealth charged Appellant with robbery, conspiracy,

_____

[4] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), and 6110.1(a), respectively.

[5] 18 Pa.C.S.A. §§ 2502(c), 903, and 6106(a)(1), respectively.

[6] 18 Pa.C.S.A. §§ 2502(c) and 903, respectively.

[7] 18 Pa.C.S.A. §§ 901(a) and 1102(c), respectively.

[8] 18 Pa.C.S.A. §§ 901(a) and 1102(c), respectively.

[9] 18 Pa.C.S.A. §§ 2502(c), 903, and 6106(a)(1), respectively.

firearms not to be carried without a license, and possession of a firearm by a minor[10] in connection with the gunpoint robbery of Nikhil Lauhe at a convenience store on March 13, 2021; and, at 9772-2021, the Commonwealth charged Appellant with robbery, conspiracy, firearms not to be carried without a license, and possession of a firearm by a minor[11] in connection with the gunpoint robbery of Joseph Cartwright at a convenience store on March 13, 2021.

Because he was a juvenile at the time he committed these crimes, Appellant sought decertification of the charges for the eight criminal Informations *supra*; however, on April 6, 2023, the trial court denied decertification. Thereafter, on May 7, 2023, at lower court docket number 2800-2024, the Commonwealth filed an Information charging Appellant with escape, conspiracy, flight to avoid apprehension/trial/punishment, criminal use of a communication facility, and hindering prosecution[12] in connection with an incident occurring on May 7, 2023, when Appellant and another pretrial detainee successfully escaped from the Philadelphia Country Prison. Appellant

---

[10] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, 6106(a)(1), and 6110.1(a), respectively.

[11] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, 6106(a)(1), and 6110.1(a), respectively.

[12] 18 Pa.C.S.A. §§ 5121(a), 903, 5126(a), 7512(a), and 5105(a)(1), respectively.

was apprehended in New York City by the United States Marshal Service Violent Fugitive Task Force on May 15, 2023.

On November 1, 2024, represented by private counsel, Gary Silver, Esquire, and court-appointed counsel, Lee Mandell, Esquire,[13] Appellant proceeded to a guilty plea hearing on all nine criminal Informations before the Honorable J. Scott O'Keefe. Aside from the Commonwealth agreeing to not seek mandatory minimum sentences, the parties agreed on the record that there was no negotiated plea agreement as to sentencing. N.T., 11/1/24, at 67.

Relevantly, Appellant confirmed he was entering guilty pleas of his own free will, and no one had forced or coerced him. *Id.* at 6. He denied that anyone had promised him anything not included in the written guilty plea colloquies. *Id.* He specifically answered "yes" to whether he was satisfied with his attorneys' representation. *Id.*

The Commonwealth set forth on the record the details of the crimes at each lower court docket number, as well as the evidence, including multiple videos and ring camera footage, which the Commonwealth was prepared to present if Appellant proceeded to trial. *Id.* at 9-65. For each docket number,

_____

[13] Attorney Silver took the lead for all cases during the guilty plea and sentencing hearings.

the trial court asked Appellant how he pled for each crime, and Appellant

answered, "Guilty." *Id.*

After the trial court accepted Appellant's guilty pleas, the following

relevant exchange occurred:

> THE COURT: All right. Counsel, my understanding is the Defense is waiving their right to a pre-sentence investigation; is that correct?
>
> ATTORNEY MANDELL: That's correct.
>
> ATTORNEY SILVER: Yes.
>
> ***
>
> ATTORNEY SILVER: [I]f I may, there has been at least one forensic evaluation so far with regard to [Appellant] and another forensic evaluation is being scheduled and supposed to be done this Sunday, as well. So, those will be prepared and provided to the Court[.]

*Id.* at 66-67. Attorney Silver clarified that the existing psychological forensic

evaluation had been conducted in conjunction with Appellant's motion for

decertification.

On November 14, 2024, Appellant, still represented by Attorneys Silver

and Mandell, proceeded to a sentencing hearing before Judge O'Keefe. At the

commencement of the hearing, the trial court indicated it had reviewed the

psychological forensic evaluations. N.T., 11/14/24, at 3. Attorney Mandell

advised the trial court that Appellant had a difficult childhood, lived at many

different locations, and was raised by different people under difficult

circumstances. *Id.* at 3-4. At the age of ten, Appellant was diagnosed with

attention-deficit/hyperactivity disorder ("ADHD"), and he began using illegal substances at the age of twelve. *Id.* at 4. Appellant had difficulties in elementary and secondary school, and he lacked a structured environment. *Id.* at 5. He noted that several friends and family were in the courtroom to support Appellant, so he "is not a lost soul." *Id.* at 7. Attorney Mandell indicated he did not have a specific sentencing recommendation; however, he requested the trial court consider the defense's arguments, as well as the psychological forensic evaluations. *Id.*

Attorney Silver admitted that Appellant's crimes are serious, but counsel requested the trial court consider Appellant's rehabilitative needs. *Id.* at 9. He noted that Appellant's sentence should reflect an individualized balancing of the seriousness of the crimes and Appellant's rehabilitative needs. *Id.* at 12. Attorney Silver noted that Appellant committed his crimes when he was a juvenile, and his brain was not yet fully developed, thus contributing to his inability to make good decisions. *Id.* Attorney Silver averred that it was impossible for Appellant to appreciate the gravity of his offenses because of his young age. *Id.* at 16. He argued that the expert forensic reports support the idea that there is a difference between the brains of teenagers and adults. *Id.* at 19. Accordingly, he contended that Appellant should not be "punished in the same regard as an adult." *Id*

Attorney Silver indicated that, as an advocate, he is always seeking the lowest prison sentence possible for his clients, and he discussed "a range of sentences" with Appellant. *Id.* at 36-37. He again emphasized that the trial court's sentence must reflect a balance between punishment and rehabilitation. *Id.* at 37. Attorney Silver indicated that he had a sentencing recommendation, but he wasn't sure "what the value of it" would be for the trial court. *Id.* at 36. However, given Appellant's "young age and the unbelievable amount of change that will occur [as Appellant ages]," the defense "was asking the Court for 20 years on the minimum side." *Id.* at 38. He argued that an aggregate minimum sentence of 20 years would punish Appellant for his crimes while still giving him a chance to receive parole after he matures. *Id.* at 38-39.

Appellant presented testimony from Damone Jones, the Senior Pastor at Bible Way Baptist Church, who testified that Appellant has expressed remorse for his crimes. *Id.* at 30. Further, Appellant made a statement accepting responsibility, expressing remorse, and seeking leniency. *Id.* at 80-81. He noted he never had a positive role model because his father was a "hardcore drug user," and his mother was sent to prison for four years. *Id.* at 80.

The Commonwealth offered numerous written victim impact statements related to various victims, as well as testimony from Mr. Hargrove's family members. *Id.* at 52-80.

At the conclusion of the hearing, on all nine lower court docket numbers, the trial court imposed an aggregate sentence of fifty-five years to one hundred years in prison, to be followed by five years of probation.

On November 24, 2024, represented by new counsel, Daniel McGarrigle, Esquire, Appellant filed a timely motion for reconsideration of sentence at each lower court docket number, except 2800-2024. In the motion, in addition to raising discretionary aspects of sentencing claims, Appellant requested permission to file an amended post-sentence motion upon Attorney McGarrigle's review of the transcripts. By order entered on December 2, 2024, the trial court granted Appellant permission to file an amended post-sentence motion,[14] and on December 16, 2024, Appellant filed a counseled amended post-sentence motion.

_____

[14] Regarding lower court docket number 2800-2024 (related to Appellant's escape from prison), there is no docket entry indicating that Appellant filed a timely motion for reconsideration of sentence. Rather, on December 2, 2024, the trial court filed an order *sua sponte* permitting Appellant to file a post-sentence motion *nunc pro tunc* by Monday, December 16, 2024, which was within thirty days after the imposition of sentence. **See** 1 Pa.C.S.A. § 1908 (relating to computation of time; where the last day falls on a Saturday or Sunday, it is omitted from the computation of time)*.* Thereafter, Appellant filed a counseled post-sentence motion *nunc pro tunc* on Monday, December
*(Footnote Continued Next Page)*

On December 17, 2024, the matter was reassigned to the Honorable Barbara A. McDermott. On January 8, 2025, the Commonwealth filed an answer in opposition to Appellant's post-sentence motions, and on February 25, 2025, Judge McDermott held a consolidated hearing on Appellant's post-sentence motions for all nine cases.

At the commencement of the hearing, Attorney McGarrigle informed Judge McDermott that Attorney Silver had been suspended from the practice of law on October 16, 2024, effective November 30, 2024. N.T., 2/25/25, at 12. He suggested that Attorney Silver "hurried along" Appellant's cases so that the cases would be concluded prior to Attorney Silver's suspension. *Id.* Attorney McGarrigle suggested that the trial court erred in failing to colloquy Appellant as to whether he was aware of Attorney Silver's alleged conflict of interest (*i.e.*, his impending suspension causing him to "rush" Appellant's case). *Id.*

---

16, 2024, raising the same claims he raised in his December 16, 2024, amended post-sentence motion at all other lower court docket numbers.

Since the trial court expressly gave Appellant permission to file a post-sentence motion *nunc pro tunc* within thirty days after the imposition of the November 14, 2024, judgment of sentence, we shall overlook any irregularity as it pertains to Appellant filing, and the trial court addressing, Appellant's post-sentence motion *nunc pro tunc* at 2800-2024. *See Commonwealth v. Dreves*, 839 A.2d 1122 (Pa.Super. 2003) (*en banc*) (indicating that, if no appeal has been taken, within 30 days after the imposition of sentence, the trial court has the discretion to grant a request to file a post-sentence motion *nunc pro tunc*).

Appellant called Attorney Silver[15] to testify. Relevantly, Attorney Silver confirmed he was suspended from the practice of law in Pennsylvania for four years on October 16, 2024; however, the order was amended with an effective start date of November 30, 2024, for four years. *Id.* at 16-17. He noted his suspension start date was amended to give him time to "wrap up the cases he had," which included Appellant's cases. *Id.* at 18. Attorney Silver testified he specifically advised Appellant, Appellant's family, and Judge O'Keefe about his upcoming suspension. *Id.* at 33. He also testified he asked Appellant if he wanted different counsel and/or to have Attorney Mandell take the lead, and Appellant declined. *Id.*

Attorney Silver confirmed he met with ADA Jaramillo and Judge O'Keefe in the judge's chamber to discuss Appellant's cases during many case status listings. Based on his alleged understanding of these discussions, Attorney Silver testified he told Appellant that "for the four homicides, two attempted murders, two robberies, and the escape" he would receive a minimum aggregate sentence of 25 years with an unknown maximum sentence. *Id.*

_____

[15] Effective November 30, 2024, Attorney Silver was suspended from the practice of law in Pennsylvania. *Id.* at 16. However, since his suspension did not commence until after the entry of Appellant's guilty plea and sentencing in his nine cases, for the ease of discussion, we shall refer to him as "Attorney Silver."

Attorney Silver testified that Appellant agreed to plead guilty and waive a pre-sentence investigation report on this basis. *Id.* at 39.

On cross-examination, when the Commonwealth asked Attorney Silver if he was mistaken about his alleged "understanding" with ADA Jaramillo and Judge O'Keefe, Attorney Silver testified he did not misunderstand and, if there wasn't such an "understanding," there would be no reason to so inform Appellant. *Id.* at 81. However, Attorney Silver admitted Appellant paid him a $25,000.00 retainer fee, and at this time, he was aware the Disciplinary Board might suspend his license. *Id.* Attorney Silver denied, however, that he rushed Appellant's cases when he was notified of the suspension, and he noted that he would have given Appellant his money back if Appellant had chosen to have another attorney represent him when Attorney Silver informed him of his upcoming suspension. *Id.* at 84.

Attorney Silver testified he did not request a pre-sentence investigation report after Appellant entered his guilty pleas because there was ample mitigating evidence from the decertification process. *Id.* at 39-40. Further, the defense had reports from forensic psychological evaluations conducted on Appellant. *Id.* at 41.

Appellant declined to testify. The Commonwealth presented no witnesses; however, the Commonwealth entered into evidence various stipulations.

At the conclusion of the hearing, Judge McDermott noted that Appellant appeared to be raising claims of ineffective assistance of counsel related to his guilty plea and sentencing hearing. Judge McDermott acknowledged that ineffective assistance of counsel claims are generally deferred to the PCRA[16]; however, she indicated that there are exceptions to this rule. She concluded this may be "one of those exceptions," but Appellant would need to express his explicit understanding that he was voluntarily waiving his right to PCRA review. *Id.* at 111-13.

Attorney McGarrigle informed Judge McDermott that Appellant was not seeking to withdraw his guilty pleas in the nine cases, and he was withdrawing any such request and/or claim of ineffective assistance of counsel related to his guilty pleas. However, Attorney McGarrigle argued that Appellant's aggregate minimum sentence was excessive since the trial court did not consider a pre-sentence investigation report, and the trial court did not adequately consider the mitigating factors.

Attorney McGarrigle specifically stated:

Judge, at this time, I [don't seek] a motion to withdraw a plea. What I'm saying is due process of—[Appellant] is entitled to due process and effective representation, all throughout the process, beginning to end. It didn't happen at the end because the sentences were rushed, because the license status of his counsel, and the promise made by his counsel to him. So, I'm asking we

_____

[16] Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545.

do a proper sentencing with a pre-sentence report. That is my request.

***Id.*** at 110.

Judge McDermott then asked Appellant if he wished to be foreclosed from arguing in the future that his guilty plea was induced by Attorney Silver's advice. ***Id.*** at 113. Appellant answered, "No, I don't." ***Id.*** Concluding Appellant's claims related primarily to sentencing, Judge McDermott transferred the case back to Judge O'Keefe.[17]

By order entered on March 7, 2025, Judge O'Keefe denied Appellant's motion for reconsideration of sentence, which was filed at each lower court docket number. Appellant filed timely, separate notices of appeal at each lower court docket number, and this Court consolidated the appeals. All Pa.R.A.P. 1925 requirements have been adequately met.

On appeal, Appellant presents the following issues in his "Statements of Question Involved" (verbatim):

1. Was Appellant denied his right to due process and right to counsel when the court erred in allowing trial counsel to

---

[17] In her opinion, Judge McDermott indicated that, out of an abundance of caution, she accepted testimony from Attorney Silver since it appeared from Appellant's post-sentence motions that Appellant was seeking to withdraw his guilty plea and raising numerous claims related to Attorney Silver's representation. Trial Court Opinion, filed 2/27/25, at 3. Judge McDermott concluded that, "[a]fter taking time to discuss the matter with his counsel, [Appellant] decided not to pursue a Motion to Withdraw his Plea[.]" ***Id.*** at 4.

continue representing Appellant despite laboring under an actual conflict of interest?

2. Was Appellant denied his right to counsel and right to due process and a fair and individualized sentencing when the trial court denied Appellant's post-sentence request to present mitigation evidence at a new sentencing hearing after learning that conflicted counsel advised Appellant to waive those rights under the false pretenses?

Appellant's Brief at 3.

Appellant's issues are intertwined. He contends the trial court erred in allowing Attorney Silver to represent him during his guilty plea and sentencing hearings because Attorney Silver had an "actual conflict of interest" due to his impending suspension by the Pennsylvania Disciplinary Board. **See** Appellant's Brief at 12. He suggests that the trial court should have conducted a colloquy to determine whether Appellant knew about the disciplinary action to ensure he voluntarily waived the conflict of interest.

Initially, we note that neither Appellant nor the Commonwealth asked the trial court to disqualify Attorney Silver. Specifically, Appellant raised no issue in the trial court seeking the disqualification of Attorney Silver, the appointment of new counsel, or to proceed *pro se*.[18] **See** Pa.R.A.P. 302(a). Also, Attorney Silver did not seek to withdraw his representation.

_____

[18] We note that **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), requires a court to conduct a colloquy with the defendant who wishes to represent himself to determine, among other things, the voluntariness of the waiver of the right to counsel.

Nevertheless, Appellant contends that, once Judge O'Keefe was advised that Attorney Silver had been disciplined by the Disciplinary Board, Judge O'Keefe should have *sua sponte* conducted a colloquy to determine whether Appellant wished to proceed with Attorney Silver as his counsel, and the trial court's failure to do so is reversible error. In this vein, he indicates "[w]hile counsel may or may not have told Appellant about his problems with the Disciplinary Board and impending suspension, any such discussion does not cure the court's failure to conduct a colloquy on the subject and to ensure that Appellant knowingly and voluntarily waived the conflict before proceeding." Appellant's Brief at 30. Assuming, *arguendo*, Appellant has preserved this claim,[19] and it is ripe for direct appeal,[20] we find he is not entitled to relief.

Here, Appellant's argument is premised on his theory that Attorney Silver's impending suspension was an "actual conflict of interest." More precisely, his theory is that Attorney Silver's impending disciplinary suspension caused him to "rush" Appellant's case so that he could keep his retainer fee, and such action constitutes an actual conflict of interest.

---

[19] During the February 25, 2025, post-sentence motions hearing, Appellant presented a challenge to the trial court's failure to colloquy him due to Attorney Silver's alleged conflict of interest related to his disciplinary action.

[20] *See Commonwealth v. Rogal*, 120 A.3d 994 (Pa.Super. 2015) (addressing on direct appeal the merits of a claim that the appellant was denied due process of law because his attorney operated under a conflict of interest).

Initially, we note that, absent an abuse of discretion, we must accept a trial court's finding that there was no conflict of interest, which might require disqualification of counsel and/or a colloquy of a defendant. **See Commonwealth v. Khorey**, 555 A.2d 100, 110 (Pa. 1989). Simply put, if there is no conflict of interest, the trial court does not need to conduct a colloquy to determine whether the defendant waives any alleged conflict. **See Commonwealth v. Coffey**, 608 A.2d 560, 562 (Pa.Super. 1992) ("The right to counsel of choice should not be interfered with in cases where the potential conflicts of interest are highly speculative….") (quotation marks and quotation omitted)); **Commonwealth v. Szekeresh**, 515 A.2d 605 (Pa.Super. 1986) (where defense counsel has a conflict of interest, a defendant may knowingly and intelligently waive the conflict of interest); **Commonwealth v. Jones**, 416 A.2d 539 (Pa.Super. 1979) (holding that, where defense counsel was not laboring under a conflict of interest, there was no need for the trial court to conduct a colloquy to determine whether the appellant waived any alleged conflict).

Regarding what qualifies as a conflict of interest, our Supreme Court has recognized:

> The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his professional interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

***Commonwealth v. Duffy***, 394 A.2d 965, 967 (Pa. 1978) (quotations omitted).

Moreover, our Supreme Court has held that, "to establish a conflict of interest, an appellant must show [(1)] that counsel actively represented conflicting interests[,] and [(2)] the actual conflict adversely affected counsel's performance." ***Commonwealth v. Spotz***, 18 A.3d 244, 268 (Pa. 2011). Where the appellant offers merely a bare assertion that his attorney's representation carried the potential for conflict, his claim fails. ***See Commonwealth v. Karenbauer***, 715 A.2d 1086, 1094 (Pa. 1998) ("Where, as here, the record clearly demonstrates that counsel did not actively represent conflicting interests, a claim based on the appearance of a conflict of interest lacks merit."); ***Commonwealth v. Clark***, 374 EDA 2019, 2020 WL 249169, at *6 (Pa.Super. filed 1/16/20) (unpublished memorandum)[21] (holding the appellant's claim that he was entitled to a new trial because the trial court failed to colloquy him as to whether he wished to waive his lawyer's alleged conflict of interest provided the appellant with no relief since the appellant made no attempt to show an actual conflict of interest that adversely affected his lawyer's performance).

---

[21] ***See*** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

In the case *sub judice*, we conclude that Appellant makes no attempt to show, as decisional law requires, an actual conflict of interest that adversely affected his lawyer's performance. **See Clark**, **supra**. Critically, Appellant's allegations of a conflict of interest are vague, entirely speculative, and contradicted by the evidence of record.

In this vein, we note there is no dispute that Attorney Silver was neither disbarred nor suspended during his representation of Appellant. Further, there is no indication Attorney Silver was representing one of Appellant's cohorts. **See Rogal**, **supra** (discussing dual representation). Simply put, Appellant has not demonstrated Attorney Silver was not acting solely for Appellant's benefit. **See Duffy**, **supra**.

To the extent Appellant claims Attorney Silver was "actively representing conflicting interests," *i.e.*, Appellant's interest and his own interest, in seeking to resolve Appellant's cases before his suspension took effect so that he could keep his retainer fee, we conclude Appellant's own evidence contradicts this speculative assertion. Specifically, on direct examination by Appellant's counsel during the post-sentence evidentiary hearing before Judge McDermott, Attorney Silver denied that he rushed Appellant's cases when he was notified of the suspension, and he noted that he would have given Appellant his money back if Appellant had chosen to have another attorney represent him when Attorney Silver informed him of his

upcoming suspension. N.T., 2/25/25, at 84. Appellant offered no evidence or testimony contradicting this evidence. In any event, his argument fails because he offers merely a bare, speculative assertion that Attorney Silver's representation carried the potential for conflict. **See Clark**, 2020 WL 249169, at *6 ("[The] [a]ppellant's argument fails because it offers merely a bare assertion that dual representation at sentencing carried the potential for conflict.").

Accordingly, since Appellant did not demonstrate that Attorney Silver actively represented conflicting interests, there was no need for the trial court to conduct a colloquy to determine whether Appellant knowingly, intelligently, and voluntarily waived any alleged actual conflict of interest and/or to determine whether Attorney Silver should be disqualified from representing Appellant.[22] **See Commonwealth v. Rivera**, 108 A.3d 779 (Pa. 2014).

_____

[22] Further, Appellant did not demonstrate the alleged conflict adversely affected Attorney Silver's performance. **See Spotz**, **supra**. Although Appellant suggests on appeal that, in an attempt to "rush" his case and induce him to plead guilty involuntarily, Attorney Silver falsely communicated to him that there was an alleged "understanding" for Appellant to receive a minimum aggregate sentence of twenty-five years in prison. However, Appellant abandoned claims related to the voluntariness of his guilty pleas during the post-sentence hearing before Judge McDermott. Moreover, to the extent he claims that, in an attempt to "rush" his case, Attorney Silver erred in waiving a pre-sentence investigation report, we note Appellant presented two psychological forensic evaluation reports in lieu of a pre-sentence investigation report during sentencing. The trial court determined that "[t]hese reports were extensive and provided the court with more information

_(Footnote Continued Next Page)_

Finally, Appellant avers the trial court failed to impose an individualized sentence and/or consider all available mitigating evidence. This presents a challenge to the discretionary aspects of Appellant's sentence. **See Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa.Super. 2010).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa.Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Moury**, 992 A.2d at 170 (citation omitted).

Here, Appellant filed a timely post-sentence motion, and a timely notice of appeal. However, he failed to include in his brief a separate Rule 2119(f) statement, and the Commonwealth has specifically objected. **See** Commonwealth's Brief at 17.  We are precluded from reaching the merits of

---

than a court ordered pre-sentence investigation report would have."  Trial Court Opinion, filed 5/27/25, at 34.

an appellant's discretionary sentencing claim when the Commonwealth lodges an objection to the omission of the statement. ***See Commonwealth v. Weir***, 201 A.3d 163 (Pa.Super. 2018); ***Commonwealth v. Roser***, 914 A.2d 447, 457 (Pa.Super. 2006). Accordingly, we are precluded from reaching the merits of Appellant's discretionary aspects of sentencing claim in the case *sub judice*.[23]

For all of the foregoing reasons, we affirm.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/15/2026

---

[23] Additionally, to the extent Appellant attempts to frame his various issues as ineffective assistance of counsel claims, we note that "claims of ineffective assistance of counsel are to be deferred to PCRA review." ***Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013). Although there are limited exceptions permitting ineffective assistance of counsel claims to be addressed on direct appeal, Appellant has not met any of the exceptions. ***See Commonwealth v. Watson***, 310 A.3d 307 (Pa.Super. 2024). Specifically, Appellant's claims of ineffective assistance are not meritorious and apparent from the record. ***See id.*** While Judge McDermott initially found there may be "good cause" to examine Appellant's ineffectiveness claims on post-sentence review, Appellant declined to expressly waive his right to PCRA review. ***See id.*** Further, Appellant is not statutorily precluded from seeking PCRA relief. ***See id.***